ALBANY,
August, 1812.

JACKSON
v.
WELLS.

JACKSON, *ex dem.* JEREMIAH WELLS, *against* DANIEL WELLS.

Where A. being seised in fee of lands, devised to D. among other things, as follows: "I give and bequeath unto my eldest son, *Daniel,* all that part of a lot of land that I now live on, northward," &c. and after devises and legacies to other sons, and his daughters, devised to his third son, as follows: "1 give and bequeath unto my third son, *Jeremiah,* and to his heirs and assigns, for ever, all the rest of my estate, both moveable and immoveable, of every kind, not disposed of," &c. "he paying all my just debts, and the said legacies, &c. and if he should refuse or neglect to pay all my just debts, &c. then my will is, that my executors sell so much of that part of my estate given to him, as shall pay," &c. It was held, that *Daniel* took only a *life* estate in the lot devised to him; and that *Jeremiah,* under the devise to him of the residue of the testator's estate, took the remainder in fee, after the determination of such *life* estate.

THIS was an action of ejectment, for lands in *Suffolk* county. The cause was tried at the *Suffolk* circuit, in *July,* 1810, before Mr. Justice *Yates.*

A verdict was taken for the plaintiff, subject to the opinion of the court, on a case containing the following facts, with liberty to either party to turn the same into a special verdict; and also to put into the form of a bill or bills of exceptions, to be returned on the *postea,* all or any part of the testimony objected to by either party, and admitted by the judge, &c.

On the part of the plaintiff, the will of *Daniel Wells* the elder, who was father of the lessor of the plaintiff, and grandfather of the defendant, was read. It was dated the 25th *March,* 1761. The parts of it which it is material to state here, are as follows: "As to such worldly estate it has pleased God to confer upon me, I give and bequeath as follows, after my just debts are paid, and funeral expenses satisfied by my executors after named: *Imprimis,* I give and bequeath unto my eldest son, *Daniel Wells,* all that part of a lot of land I now live on, northward of the north road, and also three lots on the broad meadow, and also a convenient way through my said lot, to the south road, &c. And also one half of all my common. *Item.* I give and bequeath unto my second son, *Mica Wells,* and to his heirs and assigns for ever, a two pole way from the land of my said son," &c.

Then follow devises to his *fourth, fifth and sixth* sons, and their heirs and assigns for ever, and legacies to his daughters; then the following clause: "*Item.* I give and bequeath unto my third son, *Jeremiah Wells,* and to his heirs and assigns for ever, all the rest of my estate, both moveable and immoveable, of every kind not disposed of, to him, my said son, *Jeremiah Wells,* and to his heirs and assigns for ever, he paying all my just debts, and the above said legacies, &c.; but if my said son refuse or neglect to pay all my just debts, and the above legacies, then my will is, that my executors shall sell so much of that part of my estate,

which I gave to him, as shall pay all my just debts, and the above legacies. Lastly, I do nominate, &c. my two sons, namely, Daniel Wells and Jeremiah Wells to be my only executors," &c.

The testator died the 2d *April*, 1761. The lands in question were those described in the first clause in the will, as devised to his eldest son *Daniel*, and of which the testator at the time of his death was seised in fee-simple. *Daniel*, the eldest son of the testator, on the death of his father, took possession of the lands so devised to him, and died in possession, on the 18th *August*, 1793. *Jeremiah Wells*, the lessor, is the person called by the testator in his will, his *third son, Jeremiah.*

*Daniel Wells*, the eldest son of the testator, held the premises during his lifetime, considering himself as the owner thereof, in fee-simple, and devised the same to his eldest son *Daniel*, the present defendant, who, on the death of his father, in 1793, entered into possession under that devise, and has ever since held the possession, as owner thereof, in fee-simple. The children mentioned by the testator, in his said will, were living at the time of his death.

*Baldwin*, for the plaintiff.

*Riker*, contra.

*Per Curiam.* Upon this will it is clear, upon the established principles of construction, that the defendant's father took only an estate for life. The words of the will are, " I give and bequeath unto my eldest son, *Daniel Wells*, all that part of a lot of land that I now live on." Here are no words of limitation or perpetuity, though it appears, from other parts of the will, that the testator understood their force and effect, and knew how to use them; nor is there a single word, or expression, which denotes any thing more than a description of the land devised. There is nothing which alludes to the quantity of interest which the testator had in the land. It is a mere designation of its local situation, and to give this devise the effect of a fee would overset a volume of adjudged cases, and throw the law of devises into inextricable confusion and uncertainty. The cases of *Denn* v. *Gaskin*, (*Comp.* 657.) *Right* v. *Sidebotham*, (*Doug.* 759.) *Doe* v. *Wright*, (8 *Term Rep.* 64.) and *Doe* v. *Child & Wife*, (4 *Bos. & Pull.* 335.)

ALBANY,
August, 1812.

may be cited out of an almost endless series of authorities, as very much in point, and perfectly decisive.

2. The next question is, whether the remainder of the testator's interest in the premises, after the termination of the life estate, was not devised to the lessor of the plaintiff. He gives to the lessor, in fee, " All the rest of his estate, both moveable and immoveable, of every kind not disposed of," and then charges it with some debts and legacies, and in default of his paying the same, the testator directs that so much of the estate so devised to him, should be sold, as should be requisite to pay the debts and legacies. This point is as clear as the other. *All the rest of his estate, not disposed of*, is a general sweeping clause, that must most obviously embrace the interest in question. After this clause, there could be no dying intestate as to any part of the estate. The authority to the executors to sell any part of his estate on nonpayment of the debts and legacies, cannot be considered as a restraint or qualification of the residuary clause, so as to detach the interest in question from it; for an interest in remainder is capable of being sold no less than a vested interest.

The plaintiff is, accordingly, entitled to judgment.

Judgment for the plaintiff.