The opinion of the Court was delivered by
Nott, J.
In all deeds or grants of land, the words “heirs” is necessary to carry a fee simple The rule has been somewhat relaxed in relation to wills. No technical words of inheritance are required ; hut the intention of the testator is to he received as the rule of decision. And although the opinions expressed by Lord Mansfield, 2 Doug. 163, and Judge Buller, 3 T. R. 356, are probably correct, “'that there is hardly any case of this sort, where only an estate for life is held to pass, but that it counteracts the testator’s intention,” yet I believe, that letting go the security, which technical terms affords to real property, has been introductory of mischief, much to be lamented. It has opened the floodgates of uncertainty, and destroyed the peace of families, by bringing into dispute half of the wills that are made. And even Lord Mansfield, whatever might have been his wishes on the subject, had not the “ boldness,” as Lord Kenyon expresses it, to innovate upon the law, as settled by a series of decisions of their Courts.
But although technical words are not necessary, we must not be led astray by the generality of the expression, that the intention is to govern. Successive decisions have established rules by which the intention *3851 *is ke ascertained, and which are now to be considered as land-J marks to lead us with some degree of certainty to the construction of wills as well as deeds ; and it would be unwise and improper to overleap the bounds which have thus been prescribed for us, and to venture again into the broad field of conjecture in pursuit of a dubious intention. Indeed, the first departure from the old common law rule was merely an indulgence allowed to ignorant persons, inops consilii, of adopting their own mode of expression in the stead of technical terms, yet, unless apt and fit words, expressive of that intention, and calculated to convey the same idea, are used, the legal construction must prevail.
The rules, for the construction of wills, which I consider now very well established, are,
1. Where the testator makes use of any words of perpetuity, as, for instance, to “ give to one forever,” or “ to one and his assigns forever,” or “ to one in fee simple,” it will convey an estate of inheritance, although no technical words are used. 2 Black. Com. 108. Or,
2. Where the testator makes use of some word sufficiently comprehensive to embrace the interest which he has in the land as well as the land itself, as the word “ estate,” or some other word of equally extensive import. Cowper vs. Marten, et al. 1 D. & E. 411. Fletcher v. Smiton, 2 Ib. 656. Denn dem. Moore v. Mellor, 5 Ib. 561. Right v. Sidebotham, Doug. 163. Or,
3. Where the land itself is clogged with some incumbrance, or the devisee charged with some duty connected with the devise, the performance of which is inconsistent with any less estate, or in other words, where the express provisions of the will cannot be carried into effect *605 without such construction, as where the payment of debts, legacies, and funeral expenses, accompanies the devise, &c., because the charges may amount to more than the life estate would be worth. 3 Term Rep. 356, Palmer, et al. v. Richards. 5 Ib. 561. 8 Ib. 1, Doe v. Holmes.
*1 will not undertake to say that there may not be other ano- r*ooR malous cases, where, from all the provisions of the will, taken *- ” together, such an intention may be inferred. But if there are any such, I have not come across them. I think, therefore, it may be considered as pretty well settled, that unless a case comes within one of these rules, no greater interest will pass than a life estate, without technical words of inheritance; and the law being so settled, we are not at liberty to depart from it.
It is not pretended, that the devise in question comes directly within either of the rules above laid down ; neither do I understand it to be contended, that there is any thing in the particular provisions of this will to make it an exception. But-it is said that the word “ estate,” in the preamble, may be transferred to the devising clause, so as to vest the inheritance in the devisee ; and as that seems to be the strong ground on which the question is to turn, I have examined the eases with some degree of attention, which it is supposed go to support the doctrine; and they do not appear to me to establish the position.
The cases most directly in point, on this subject, are Beachcroft v. Beachcroft, 2 Vern. 690. Tanner v. Wise, 3 P. Williams, 294. Ibbetson v. Beckwith, Talbot’s cases, 157, and Grayson v. Atkinson, 1 Willson, 333. In the three first, the word “ estate” is not confined to the introduction, but is distinctly repeated in the devising part of the will. And in the last, the testator charges the devisee with the payment of several legacies, and directs him to sell all or any part of his real or personal estate for the purpose of paying his debts and legacies; and it was on that ground expressly, taken in connection with the other, that the Lord Chancellor held that a fee passed. In the case of Beachcroft v. Beachcroft, also, the estate is subjected to the payment of debts, and a legacy of three hundred pounds, so that all those cases come within one or more of the rules above laid down. And in none of them are the introductory words relied on any farther *than as one circumstance, among others, from whence the intention may be inferred. L ‘ And even though there should appear to be some confusion among the old cases, the modern authorities are uniform on the subject. In the case of Frogmorton v. Wright, 3 Willson, 414, Lord Chief Justice De Grey says, there is no case where it ever was determined, that the words, “ as touching the disposition of my temporal estate,” carried a fee. Those words, he observes, are merely descriptive of the particular estate or lands as to locality, but not as to the quantity of interest which the testator has in them. This opinion has been the subject of animadversion by some who have differed in opinion with this learned judge; but I believe that when the whole case comes to be examined and understood, it will be found in unison with every decision that has taken place in England, from that time to the present day. In the case of Denn v. Gaskins, Cowper, 660, and Right v. Sidebotham, Doug. 761, Lord Mansfield said, “if the testator had, in any way, connected the introductory part with the devise in question, it might have done. But as there was *606 no connection, the devisee could only take a life estate.” In the case of Doe ads. Wright, 8 D. & E. 67, Lord Kenyon, speaking of the case of Ibbetson v. Beckwith, Talbot’s cases, 151, where some stress was laid on the introductory words, says, “ it is now clearly settled, that those words are not, of themselves, sufficient to carry a fee.” Doe dem. Spearing v. Buckner, 6 Ib. 612. Indeed, they have now become as universal, and as much a matter of form, as the pious ejaculation usually introduced at the commencement of a will. And to give them the ope-, ration now contended for, would convert every devise of land into a fee simple, when restrictive words are not used. But even that would be better than the principle now attempted to be established, of making it in all cases a question of intention, to be collected from all the parts of the will, without regard to any of the rules of construction heretofore established, by which the intention is *to be ascertained ; because -* there would be something like certaintyin such a decision, but the other would leave us without any rule. Every case would depend upon the capricious opinion of a Court and jury, and every person claiming under a will must pass through the ordeal of a Court-of justice to ascertain his rights.
It then becomes a question, whether we shall cut the Gordian knot at once, and say that no words of perpetuity, or other words evincive of the testator’s intention, shall be required to carry a fee.
It was said, in a former argument, that this was a relict of feudal tyranny, originally founded on reasons which do not now exist, aiid that we ought no longer to suffer ourselves to be bound by the fetters of a barbarous age. That it is still maintained in England, from motives of policy, peculiar to a country where the right of primogeniture is to be encouraged for the purpose of supporting the aristocratical features of the government. Yet, even there it is said the judges are deploring, that the law is so, and are resorting to every subtilty to fritter it away, and to erect a more rational system on its ruins. Cases have been read from the American reports, in support of these arguments, and our own Court of Equity, it is said, has decided that every devise of land shall be construed into a fee where no negative or restrictive words are 'used.
If this was an antiquated doctrine of the feudal system, which was now, for the first time, attempted to be resuscitated, I might not, perhaps,be disposed to make it a part of our code. But it is one, not only coeval with the first rudiments of the common law, but it is one which has passed down through successive generations, unimpaired by the vicissitudes of time, and recognized by a series of modern decisions, until there is no principle of law better established. Even the regret which learned judges have expressed, that the law is so, while they continue to be governed by it, furnishes proof conclusive, that it is too firmly established to be shaken.
*8801 *If we'are to be influenced by motives of policy, we cannot be ' J more inclined to support wills in this country than in England. Our law requires an equal distribution of property. And public policy requires that every facility should be given to its operation. Ko argument, therefore, unfavorable to the principle which I am contending for, can be drawn from that source.
Among the American cases, there are indeed some respectable opinions *607 in favor of disregarding the English decisions. But I believe, that ultimately, most of them have agreed to adhere to them. Among those are the respectable States of New York, Pennsylvania and Yirgina. (a) In New York they have been uniform. In Pennsylvania and Yirginia, there appear to have been some conflicting decisions. But, at length, they have eome back to the old rule. In Maryland, there is one very old case to the contrary. But whether it would now be considered authority, even in that State, perhaps is questionable.
It is satisfactory to observe an abatement of that spirit of innovation, which at one time appeared to be springing up in some of the States, and that those which seemed inclined to declare themselves “ independent of the English decisions,” have since returned to established principles.
The cases from our Equity Reports, are entitled to great respect. And it is very desirable that the decisions of the two Courts should be uniform. But on an abstract question of law, if it is not more peculiarly the province of this Court to settle the construction, it at least cannot be our duty to yield a point which we think already settled. But I do not consider the question yet settled in the Court of Equity. The judges of that Court were divided in opinion, and I have but little doubt that they will finally adopt the decisions of this Court, as the correct rule. The well known regard which the distinguished members of that Court, who concurred in that opinion, have, for the settled rules of the common law, forbid us to believe* that they will, upon a review of that decision, leave r^qcm afloat a doctrine so well established. L
If, therefore, we are to be governed by authority ; if we are to regard, as sacred, those principles of law which have prevailed from immemorial time, the nonsuit in this case must be set aside. The language of Lord Kenyon, in the case of Doe v. Wright, 8 D. & E. 67, is equally applicable in this Court, as in that, over which he presided. “ Certain rules, he says, have been adopted, by which the real property of this country has been governed for ages, and it would be too much for us now to overset them'. We should be removing landmarks, if we .were to abandon that which has been adopted as a rule of property, in pursuit of a doubtful intention of a testator.”
If it be asked why words of perpetuity should be required, I would answer, by asking again, why are they required in a grant or deed ? Why is a seal considered as adding solemnity to a contract ? Why are devises of real estate required to be executed with more solemnity than wills of personal property ? Why should the personal property, belonging to the wife, before marriage, become the absolute property of the husband, while he has only an usufructuary interest in her lands ? What reason can -be given for all these things, except that “ita lex ¡¡cripta estP’ Even the right of primogeniture prevailed in this State until the year 1791. Yet, as unjust and uncongenial as it was, to all our political institutions, no judge undertook to say the law should not be so, until it was altered by the Legislature. It does not belong to this Court to legislate. If the law is unwise or unjust, the remedy belongs elsewhere. Decisions of Courts, which go to unsettle long-established principles of law, always operate retrospectively, and produce effects which cannot be guarded against by any degree of vigilance or foresight. Acts of the Legislature are prospective in their operation. They are promulgated *608 and known, and every person has it in bis power to conform to them. -¡.qa-T-i The certainty of the law is the security of the * citizen. That J security is destroyed and confidence impaired by the oscilating decisions of Courts.
Nott and M'Gord, for the motion. Blanding and Starke, contra.
It has often been remarked, that it is not always so important what the law is, as that it should he known and uniform. And if any rule of law has been universally acknowledged in this State, until lately questioned in the Court of Equity, it is that now under consideration. And this appears to be an attempt to effect, through the instrumentality of the Courts, what the Legislature has refused to do. But I am glad that the attempt has not succeeded. I believe there may have been instances where the judges of this State have heretofore gone as far as we are now called upon to go, in innovating on the common law. But I have scarcely known an instance where some inconvenience has not resulted from it. One such decision entails upon us embarrassments from which twenty years practice cannot relieve ns.
I am of opinion that the nonsuit ought to be set aside.
Johnson and HugeR, JJ., concurred.
ColcooK, Gantt and Richardson, JJ., dissented.

 N. York, Jackson v. Embler, 14 Johns. 199. Penns., Clayton v. Clayton, 3 Bin. 476. Virginia, Moberry, et al., v. Marye, 1 Munf. 453.
As to connecting the introductory and devising clauses, see the cases cited in note a. Also, Goodright v. Stocker, 5 Term. Reports, 13. Den dem. Moore v. Mellar, affirmed the House of Lords, 2 B. & P. 253, S. C. 1 B. & P. 561. Doe v. Allen, 8 T. R. 503. Frogmorton v. Wright, 2 Wm. Black. R. 891. Loveacres v. Blight, 1 Cowp. 356. Goodright, ex dem. Drewry v. Barron, 11 East, 220. Doe v. Child et al., 1 N. R. 344. Doe v. Clarke, 2 New Rep. 348. Jackson v. Harris, 8 John. 145. Jackson v. Bull, 10 John. 149. Jackson v. Wells, 9 John. 222. Jackson v. Balcock, 12 John. 391. R.
This case is cited 1 McC. 548. After the Act of 1824 (6 Stat. 238, § 7), it was reversed. 4 McC. 444.
See Bowers v. Newman, 2 N. & McC. 488 ; Dunlap v. Crawford, 2 McC. Ch. 171, cited 1 McC. 548.