### Olmsted vs. Harvey.

Where lands are devised to a person, in general terms, without words of limitation
or perpetuity, the devisee takes but a life estate ; unless the will contains some-
thing manifesting an intention on the part of the testator, to convey a greater estate
than that embraced in the legal import of the terms of the devise.

In construing wills, a different principle prevails from that which is applicable in the
construction of other instruments.

In regard to wills, courts are permitted to look beyond the mere phraseology of the
devise, and gather the intention of the testator from the whole instrument. And
if the context discloses an intention differing from that derived from the technical
effect of the words of the particular devise, the former must prevail. And thus a
devise, without words of limitation, which, standing alone, gives a life estate, may
be enlarged into a fee, by other parts of the will showing a clear intention to dis-
pose of the whole estate. For the intention of the testator is the law of devises.

In ascertaining this intention, however, courts are governed by the principles which
have been settled in adjudged cases.

The law is well settled that introductory words in a will may be accepted as explan-
atory of what follows, *juncta juvant ;* but of themselves, they are never sufficient
evidence of an intention to convey the whole estate.

And in all the cases where the estate given by the will has been enlarged by the
courts, by implication, it has been done upon other words which, of themselves,
without the introduction, would be sufficient to imply an intention to give
the fee.

The true rule is that the introductory clause does not have the effect to enlarge the
estate devised, unless the words of disposition, in the clause of devise, are con-
nected, in terms, or sense, with the introductory clause, and import more than a
mere description of the property.

The circumstance that a testator gives to his sons a remainder in real estate, after the
expiration of the life estate of the widow, is no evidence of his intention to give
them the fee.

Where land is devised indefinitely, and the devisee is directed to pay a gross or an-
nual sum, he takes a fee. This rule is founded upon the ground that unless the
devisee takes a fee, he might not live long enough to reimburse himself the amount
of the charge ; and therefore he might be injured by accepting the devise. And
it applies to all cases of possible loss.

Where the land is charged *in the hands* of the devisee, with a sum to be paid, or a
duty to be performed, by the devisee, which may require a greater than a life es-
tate, he takes a fee.

This rule is applicable to those cases in which the devisee is required, as a condition

of the devise, to pay the testator's debts; or to pay legacies and funeral expenses; or to pay an annuity to a third person; or whenever the will imposes upon the devisee, *in respect to the land,* a duty which requires that he should take a fee. Where the charge is on the land, simply, the devisee takes but a life estate.

THIS was an action of ejectment, tried at the Columbia circuit, in September, 1846, before Whiting, circuit judge; who directed a verdict for the plaintiff subject to the opinion of the supreme court, on a case containing the following facts:

The plaintiff is a daughter of Nathaniel Olmsted, who died in 1821, leaving a last will and testament, upon the construction of which the question in this case arises: and also leaving his widow, and four children, viz. Nathaniel, Joseph Washburn, Mary, and Anna. Nathaniel Olmsted, jun., died in 1835, and Joseph Washburn Olmsted died in 1837, and the widow died in 1845. The will first provides for the speedy payment of the testator's debts, and then proceeds as follows:

" Second, I order and direct that my real and personal estate be divided and distributed as hereinafter directed, which is as follows, viz. I give and bequeath unto my beloved wife, Sylvia Olmsted, the use and occupancy of the home farm, (so called,) containing about one hundred acres, with the buildings thereon; as also, she the said Sylvia Olmsted to have the use and occupancy of the Bartlett lot, (so called,) which described lands as aforesaid is to remain in the possession of the said Sylvia Olmsted so long as she remains my widow and no longer. But at the decease of the said Sylvia Olmsted, the above described land and buildings are to be equally divided between my sons Nathaniel Olmsted, junior, and Joseph Washburn Olmsted. I give and bequeath to my son Nathaniel Olmsted, junior, the lot of land that I purchased of Jacob Powers, containing fifty acres or more, and he the said Nathaniel to come in the possession of the same immediately after my decease. I also give and bequeath to my son Nathaniel Olmsted, junior, the mountain lot of land, (so called,) containing about fifty acres, and the said Nathaniel to come into possession of the same immediately after my decease. I give and bequeath to my son Joseph Washburn Olmsted one thousand dollars, to be paid to him

Olmsted v. Harvey.

when he arrives to the age of twenty-one years, the said thousand dollars to be paid out of my personal estate, (should there be a sufficiency left after the sums bequeathed hereafter to Anna Olmsted and Mary Olmsted.)   I give and bequeath to my daughter Anna Olmsted two hundred dollars, to be paid to her out of my personal property within one year from my decease. I give and bequeath to my daughter Mary Olmsted three hundred dollars, to be paid out of my personal property in one year from my decease.   I order and direct that, after my decease and a legal estimation shall be made of personal estate, (after deducting all my debts and the legacies to Anna Olmsted and Mary Olmsted as aforesaid,) shall not amount to the sum of one thousand dollars, being the sum by me bequeathed to Joseph Washburn Olmsted, then in that case, the said Joseph Washburn Olmsted shall be paid in land, (from the Powers lot, so called,) to be appraised by my executors hereinafter named, so as to make to him the sum of one thousand dollars.

"And I do most sincerely and solemnly enjoin it upon my executors hereafter named, to see and take care that this my will be religiously fulfilled in all respects, according to the true intent and meaning thereof.   But in case any dispute should arise respecting any gift, bequest, matter or thing contained in this instrument, then in that case the same should be referred to three impartial and intelligent men of the town of Canaan, known for their honesty and integrity, each party choosing one, and those two choosing a third; which three men thus chosen shall, unfettered by law and the niceties of legal construction, declare their sense of the testator's intentions, and their decision to be binding on the parties the same as would be in any court of record in the United States."

It appeared in evidence that Joseph Washburn Olmsted became of age before his death, and that the personal estate was insufficient to pay his legacy of $1000 ; the deficiency amounting to $609,69.   This amount was paid to him by Nathaniel, who conveyed to him certain lands in satisfaction of the legacy, and received from Joseph a release of all his right, title and interest of, in and to the said lot called the Powers lot.   Nathaniel

Olmsted *v.* Harvey.

Olmsted, jun. conveyed the premises in question in this suit—being the lot described in the will as the mountain lot, containing about fifty acres—to the defendant, by warranty deed, dated 18th September, 1826.

*H. Hogeboom,* for the plaintiff.   1.  The plaintiff is entitled to judgment for the premises claimed, as the heir at law of Nathaniel Olmsted.   The will of the testator only created a life estate in his son Nathaniel.   (2 *Preston on Estates,* 67, 194, *and the cases there referred to.*   14 *Serg. & Rawle,* 84.   1 *Price,* 353.   2 *Tay. Prec. of Wills,* 291, *n.*   8 *Petersd. Abr.* 145, 205.   18 *Wendell,* 200.   13 *Id.* 582.   23 *Id.* 452.   20 *Id.* 576. 21 *Id.* 463.)   2.  The intention of the testator must be collected from the words he has used; and whenever the words have received a judical construction it must be adhered to.   (8 *Pet. Abr.* 87, 88, *n.*   5 *Cowen,* 221.)   3.  There must be words of inheritance or perpetuity to pass the fee.   (8 *Pet. Abr.* 145, 205. 23 *Wend.* 452.   21 *Id.* 463.   13 *Id.* 578.)   4.  If the introductory clause of a will evinces the intention of the testator to dispose of all his worldly estate, it has not the effect to enlarge the estate devised, unless the words of disposition in the *clause of devise* are connected in terms or sense, with the introductory clause.   (20 *Wend.* 576.   8 *Pet. Abr.* 153, 106, 157, 125.)   5. Under this will the son, (Nathaniel,) could not take a fee by implication, as there was no charge imposed on account of the devise.   And if there had been a personal charge, and no words of perpetuity in the will, he could not take the fee by implication. (13 *Wend.* 578.   21 *Id.* 462.   8 *Pet. Abr.* 162.)   6.  A devise of real and personal estate subject to debts to be paid out of the personal property, and if that is not sufficient, then out of the real, only creates a life estate.   (8 *Pet. Abr.* 164, 205.)   A devise creating a charge upon the land does not carry the fee. (2 *Black. Com.* 84 *to* 86, *and notes.*)   7.  The words in the will under consideration in relation to his real and personal estate "to be divided and distributed," cannot pass the fee.   In the case of *Spraker* v. *Van Alstyne,* (13 *Wend.* 582,) it was insisted by the defendant's counsel that the words directing certain lands

to be equally divided between the testator's sons, carried the fee. But the supreme court took no notice of the point ; and when the case was subsequently argued in the court of errors, the defendant's counsel did not make that point. (*See* 18 *Wend.* 200.) The words " all my lands freely to be possessed and enjoyed," only creates a life estate. The court said the words might mean " freely to be enjoyed against the heirs, but they cannot give them so extended a meaning," (23 *Wend.* 452.) 8. The heir at law cannot be disinherited, unless such is the plain and manifest intention of the testator. (8 *Petersd. Abr.* 91, 110.)

*K. Miller,* for the defendant. The defendant claims that his grantor was seised under the will of Nathaniel Olmsted the testator, of a fee estate in the premises in question, and which passed from the devisee to the defendant, by his deed of September 18, 1826. 1. The will, in express terms, orders and directs that the testator's real and personal estate shall be divided and distributed as therein after directed. (*Jackson* v. *Merrill,* 6 *John.* 191. *Carr* v. *Jennerett,* 2 *McCord,* 66. *Morrison* v. *Semple,* 6 *Binney,* 94. *Hungerford* v. *Anderson,* 4 *Day,* 68. *Denn, ex dem. More,* v. *Mellen,* 5 *T. R.* 562. 3 *Call's Rep.* 265. *Brown* v. *Wood,* 17 *Mass.* 72. *Fox* v. *Phelps,* 20 *Wend.* 445.) 2. There are no words of perpetuity used in any part of the will, and no devise of any reversionary interest or estate. (*See Spraker* v. *Van Alstyne,* 18 *Wend.* 207, *per Walworth, chancellor.*) 3. The devise to Nathaniel Olmsted, jun. and Joseph W. Olmsted, of the homested farm and Bartlett lot, after the decease of the widow, (who had a life estate,) being a remainder interest, shows most clearly that the testator intended that they should take a fee estate. (*Butler and wife* v. *Little,* 3 *Maine Rep.* 239. 2 *Prec. of Wills,* 291, 292. *Oates* v. *Cook,* 3 *Burrows,* 1684. *See* 3 *Bing.* 3, 13. 1 *Ves. sen.* 491.) 4. The devises to Nathaniel, of the Powers and mountain lots, passed a fee ; as the Powers lot is expressly charged with the deficiency that should or might arise, (after the application of his personal estate to his debts and other legacies,) to pay the

legacy of $1000 to Joseph W. (*Spraker* v. *Van Alstyne,* 18 *Wend.* 204, 209.  *Cook* v. *Holmes,* 11 *Mass.* 528.  *Doe* v. *Richards,* 5 *T. R.* 356.  *Denn, ex dem. More,* v. *Mellen,* 5 *Id.* 562.  *Doe* v. *Allen, arguendo,* 8 *Id.* 499.)  5. The whole tenor, and particularly the concluding clauses of the will show that the testator did not intend that the disposition should be fettered by any niceties or technicalities of legal construction.  And as in no part of the will are words of perpetuity used, the court will feel themselves bound to say he intended to have the devisees take a fee estate.

*By the Court,* Barculo, J.  The plaintiff claims the one equal fourth part of the premises in question as heir at law of Nathaniel Olmsted the elder, on the ground that the devise of the mountain lot to Nathaniel Olmsted, jun., gave him but a life estate.  The defendant contends that the latter took an estate in fee, which he conveyed, by the deed of 1826, to the defendant.  The question, therefore, depends solely upon the construction to be given to the will.  As the testator died before the revised statutes went into effect, the will must be interpreted by the rules of the common law prevailing at the time of his death.

In the first place, it is quite clear that the language of the devise itself is insufficient to carry the fee.  If the same or similar words were used in any other instrument than a will, no one would pretend that they conveyed any thing more than a life estate.  But, in regard to devises, a different principle of construction obtains.  The court is permitted to look beyond the mere phraseology of the devise, and gather the intention of the testator from the whole will.  If the context discloses an intention differing from that derived from the technical effect of the words of the particular devise, the former must prevail : and thus a devise, without words of limitation—which standing alone gives a life estate—may be enlarged into a fee by other parts of the will, showing a clear intention to dispose of the entire estate.  For the *intention of the testator* is the law of devises.  (*Ram on Wills,* 1, 109.)  It is his *will* that is to be carried into effect.

In ascertaining this intention, however, the courts are gov-

erned by the principles which have been settled in adjudged cases. In the language of Lord Kenyon, "It is our duty, in construing a will, to give effect to the devisor's intention, as far as we can consistently with the rules of law; not conjecturing, but expounding his will from the words used. Where certain words have obtained a precise technical meaning, we ought not to give them a different meaning : that would be, as Lord King and other judges have said, removing landmarks ; but if there be no such appropriate meaning to the words used in a will, if the devisor's intention be clear, and the words used be sufficient to give effect to it, we ought to construe those words so as to give effect to the intent, and not to doubt on account of other cases which tend only to involve the question in obscurity." (6 *T. R.* 352.) Wherever words have received a judicial determination, the security of titles requires that such construction be adhered to. (*Jackson* v. *Luquere*, 5 *Cowen*, 221.)

This rule, which subjects wills to the authority of previous decisions, is undoubtedly a salutary one ; for otherwise, if each court was permitted to apply a conjectural interpretation to these instruments, every estate given by will would be insecure until the will had been expounded by the highest court having cognizance. Still, it cannot be denied that the rule conflicts, in some degree, with the literal terms of the former doctrine— that *the intention of the testator is the law of devises.* For it has been conceded and regretted by judges, from the days of Lord Mansfield to the present time, that the doctrine of *stare decisis,* when applied to devises without words of inheritance, has, in most cases frustrated the *actual intention* of the testator. (*See the remarks of Lord Mansfield in Loveacres* v. *Blight, Cowper,* 352 ; *and of Chancellor Walworth, in the case of Spraker* v. *Van Alstyne,* 18 *Wend.* 200.)

So manifest had this become, that the legislative power has been compelled to interfere and change the rule of construction, in such cases, not only in this and some of the neighboring states, but also in England. (1 *R. S.* 57, § 5. *Laws of Penn.* 1833, *p.* 249. *Purd. Dig.* 971. 1 *Vict. c.* 26, § 28.) In the

case before us, the lands were devised to Nathaniel Olmsted, jun. without words of limitation or perpetuity, and according to the authorities, he took but a life estate ; unless something else can be found in the will manifesting an intention on the part of the testator to convey a greater estate than that embraced in the legal import of the terms of the devise.

The defendant's counsel relies mainly upon the following grounds : 1. The introductory clause in the will.  2. The want of words of perpetuity.  3. The devise being of a remainder interest.  4. The charge upon the Powers lot.  In regard to the first point, it is contended that the words "I order and direct that my real and personal estate be divided and distributed as hereinafter directed, which is as follows," manifest an intention to dispose of the whole estate in fee.  But it is obvious that these words may be applied to a division and distribution of the estate for the lifetime of the devisees.  No clear and certain intent can be gathered from this clause, standing by itself.  For, the estate is to be divided and distributed *as hereinafter directed*, making the introduction depend upon the *subsequent directions*.

The law is well settled that introductory words in a will may be accepted as explanatory of what follows, *juncta juvant ;* but of themselves they are never sufficient evidence of an intention to convey the whole estate.  (*Ram on Wills*, 65.)  The books contain many cases in which this rule has been recognized, and applied to wills containing words of similar import to those in the present will.  Thus, in the case of *Doe* v. *Buckner*, (6 *Term Rep.* 610,) the words were "as to my estate and effects, both real and personal, I give and dispose thereof in manner following."  In *Denn* v. *Gaskin*, (*Cowp.* 657,) the words were "as to all such worldly estate as God has endued me with, I give and bequeath as follows."  (*Vide also Hogan* v. *Jackson, Cowp.* 299 ; *Wright* v. *Russell, Id.* 661 ; *Doe* v. *Wright*, 8 *Term Rep.* 64 ; *Roe* v. *Vernon*, 5 *East.* 51 ; *Goodright* v. *Barron*, 11 *Id.* 220.)

In the case of *Loveacres* v. *Blight*, (*Cowp.* 352,) where the introductory clause was : "As touching such worldly estate,

Olmsted v. Harvey.

wherewith it hath pleased God to bless me in this life, I give, demise and dispose of the same in the following manner and form." Lord Mansfield observed, " though the introduction of a will, declaring that a man means to make a disposition of *all his worldly estate,* is a strong circumstance, connected with other words, to explain the testator's intention of enlarging a particular estate, or of passing a fee where he has used no words of limitation, it will not do *alone.* And all the cases cited on the argument to show that the introductory words in this case would alone be sufficient, fall short of the mark; because they contained other words clearly manifesting the intention of the testator to pass a fee."

*Although the courts agree that the introduction may be used to assist in discovering an intent to pass the fee,* yet in all the reported cases, (unless one or two decisions in our own courts may be deemed exceptions,) where the estate has been enlarged by implication, it has been done upon other words, *which of themselves,* without the introduction, would be sufficient to imply an intention to give the fee.

The only sound rule on this subject, I apprehend is laid down by Chief Justice Nelson, in *Barhydt* v. *Barhydt,* (20 *Wend.* 576,) viz. that the introductory clause has not the effect to enlarge the estate devised, unless the words of disposition in the *clause of devise* are connected, in terms, or sense, with the introductory clause, and import more than a mere description of the property. It is hardly necessary to add that such connection is not found in the case before us.

The defendant's counsel contends that the fact that the testator did not use any words of perpetuity, nor devise any reversionary interest, shows an intention to convey a fee by the devise in question ; and cites the opinions of the chancellor and senator Dickinson, in *Spraker* v. *Van Alstyne,* (18 *Wend.* 207, 211.) In regard to that case, it is to be remarked, in the first place, that the decision was evidently based upon the principle that the devisee was personally charged with the payment of the testator's debts, in respect to the land devised to him. It is, however, undoubtedly true that both of the

Olmsted *v.* Harvey.

learned members of that court who delivered opinions, intimate that the circumstance of there being no express disposition of the inheritance, tended strongly to show, in that case, an intention to convey it by a clause without words of perpetuity.... " The will," says Senator Dickinson, " is clothed with various special and minute provisions ; the support of his wife, the discharge of a bond, the payment of legacies to his grand-daughters, &c. And even the disposition of his wearing apparel is made the subject of special provision. Is it then reasonable to suppose that the testator seriously intended to leave the lands devised to Martin undisposed of, except for the term of a single life ?"

It seems to me, however, that this mode of reasoning is at war with the unbroken line of decisions in the English and American courts for the last century. If allowed, it could be applied to, and would control, almost every case in which the question is raised. It might well be asked in every case where a man sits down to write a will, if it is reasonable to suppose he does not intend to dispose of his whole estate. There is no doubt that this is the intention in ninety-nine cases in every hundred. And if courts were permitted to take this intention, thus ascertained, there would probably never be another case where the heir of a testator, as heir, would take any thing. The cases on this subject all involve, from their very nature, the apparent absurdity of a testator making a will and yet not devising, perhaps, the principal portion of his estate. The case of *Wheaton* v. *Andrews*, (23 *Wend.* 452,) is an authority against the defendant on this point. There the will was in these words : " As touching such worldly *interest* as it hath pleased God to bless me with in this life, I dispose of the same in manner and form following, that is to say : In the first place, I give and bequeath unto Prudence, my well beloved wife, all my lands and tenements, buildings of whatever kind, with all the appurtenances thereunto belonging, by her freely to be possessed and enjoyed ; and likewise all my chattels, or any kind of movables, together with all and every my household furniture. 2d. I give and bequeath to the above named Pru-

Olmsted v. Harvey.

dence, all my wearing apparel." The testator left no children. In that will there were no words of limitation ; no devise of the inheritance ; yet the testator bequeathed all his personal chattels, and even his wearing apparel. These bequests are in the same language as the devise of his real estate ; and it is highly probable that he intended to convey an equally absolute estate in both. For, as observed in the case of *Hogan* v. *Jackson*, " common sense alone would never teach the difference" between the modes of "giving a person a horse and a quantity of land." Nevertheless, the supreme court held in that case that the devisee took only a life estate.

It is contended on the part of the defendant that inasmuch as the two sons were given the remainder, after the expiration of the life estate of the widow, the testator must have intended to give them the fee. I am not aware of any such rule of construction. It is by no means unusual to limit one life estate after another ; and I see no reason why the same language that would give a life estate in the first instance, will not also add a second life estate to a preceding one. The authorities are to this effect. (*Hay* v. *The Earl of Coventry*, 3 *T. R.* 83. *Hackley* v. *Mawbey*, 3 *Bro. C. C.* 82. *Right* v. *Compton*, 9 *East*, 267.) Mr. Powell thus sums up the authorities on the foregoing points : " Nothing is better settled than that a devise of messuages, lands, tenements, or hereditaments (*not estate*) to a person, without words of limitation, confers on the devisee an estate for life only, notwithstanding that the testator have used expressions in the introductory part of the will denoting an intention to dispose of his whole estate, or have given a nominal legacy to the heir, or the will contain declarations of an intention wholly to disinherit him, or there be an antecedent devise to him for life of the property in question, or the devise be to a class embracing the heir, as to children ; or, lastly, though there be in another part of the will, or in the immediate context, devises *expressly for life*, raising the presumption, therefore, that the testator meant something different by an indefinite devise ; though any, or it is conceived, *all* of these circumstances concur, in the same will, it is indisputably

clear that such a devise will confer only an estate for life." (2 *Powell on Devises*, 377.) The only remaining question to be considered is, whether the charge upon the "Powers lot" is of such a nature as to pass a fee by implication. The rules on this subject are quite clear. 1. Where land is devised indefinitely, and the devisee is directed to pay a gross or annual sum, he takes a fee. 2. Where the land is charged, *in the hands* of the devisee, with a sum to be paid or a duty to be performed, by the devisee, which may require a greater than a life estate, he takes a fee. 3. Where the charge is on the land, simply, the devisee takes but a life estate. The first of these rules is founded upon the ground, that unless the devisee take a fee, he might not live long enough to reimburse himself the amount of the charge; and therefore he might be injured by accepting the devise. It applies to all cases of *possible loss*. The second rule is applicable to those cases in which the devisee is required, as a condition of the devise, *to pay the testator's debts;* or *to pay legacies and funeral expenses;* (*Doe* v. *Holmes*, 8 *T. R.* 1; *Doe* v. *Stevens*, 5 *East*, 87;) or to pay an annuity to a third person; (*Shailard* v. *Baker*, *Cro. Eliz.* 744;) or wherever the will imposes upon the devisee, *in respect to the land*, a duty which requires that he should take a fee. It is quite plain that the devise in question does not come within the first rule, as Nathaniel is not directed to pay any gross or annual sum; nor within the second, for *he* is not directed to pay the deficiency in Joseph's legacy. It falls within the third rule. The Powers lot is given to Nathaniel, charged with the payment of a legacy to Joseph, of $1000, or so much thereof as the personal estate should be insufficient to pay. The balance is to be paid to Joseph *in land;* to be appraised by the executors. The evident intention of the testator was, that in case of a deficiency of the personal estate, the executors were to set apart to Joseph so much of the Powers lot as they should appraise to be equal in value to the amount of the deficiency. That portion of the land Joseph would probably hold in fee; although it is not necessary to decide that point at present. The residue of the land would remain in Nathaniel for life. Here there is no

*possibility of loss* to him, by accepting the devise.   The worst that can happen, for him, is that the whole lot may be taken to satisfy the legacy;   Nor is there any duty imposed upon him which requires that he should take a fee.   *He* is not required to pay the deficiency ; it is to be taken out of the lot, without his aid or co-operation.   It is a mere charge upon the land ; subject to which he takes the devise ; and the authorities are abundant to show that such words do not enlarge the estate to a fee by implication.   (*Dickins* v. *Marshall, Cro. Eliz.* 330. *Mason* v. *Blackmore,* 2 *Atk.* 341.   *Doe* v. *Allen,* 8 *T. R.* 497. *Doe and Jackson* v. *Ramsbottom,* 3 *Maule & Selw.* 516.)

Upon the whole, we think that the will gave Nathaniel only a life estate in the premises, and therefore that the plaintiff is entitled to recover.

Judgment for the plaintiff.

