## CAMPBELL and others *vs.* RAWDON and SARACHON.

John Bindon, in 1819, made his will; which contained this clause: "First. I give and bequeath to my sons George Bindon, Joseph Bindon, and my faithful housekeeper, Jane McCready, all that messuage or tenement in which I now live, with all the household furniture, stock of cattle and buildings, and the land known by number fifty-six containing eighty acres, to them and their heirs for their use and improvement and equal emolument during their natural lives, and after their decease, to the heirs of John Bill of the city of New York, chairmaker." And he made his sons George and Joseph, residuary devisees and legatees. The testator died in 1832; his son George in 1825; and John Bill in 1826, leaving four children, one of whom died in 1828 without issue; and another in 1837, leaving children; and a third in 1848, without issue, and the fourth still survived. This surviving daughter of Bill, and the children of the deceased daughter were the plaintiffs.

In 1829, A. W. obtained a judgment against the testator, which was revived by scire facias in 1833, and lot 56 and another were sold and conveyed by the sheriff, under which title the defendants claimed to own No. 56. The writ of scire facias issued against Joseph Bindon jun., Jane McCready and the heirs of John Bill; but was not served upon the latter; the return of the sheriff stating that they had nothing in his bailiwick by which he could give them notice, and that they were not found therein.

*Held* that the share of George Bindon lapsed, and Joseph Bindon and Jane McCready took a life estate as tenants in common of two-thirds; that the three children of John Bill, living at the time of the testator's death, also took a life estate, with right to immediate possession, in one third on the death of the testator, and in each of the remaining two thirds on the death of the first takers, respectively; that the sale on the *scire facias* did not affect their rights; and that the grandchildren of John Bill had no interest in the estate.

Under the revised statutes an heir, devisee, or terretenant is not affected by a *scire facias* to revive a judgment against an ancestor or testator, unless made a party.

The statute, (1 *R. S.* 748, § 1,) declaring that the word "heirs" is not necessary to convey a fee, and that every grant or devise of real estate hereafter to be executed, shall pass all the estate of the grantor or testator, &c. does not apply to wills of real estate executed before January 1st, 1830, although the testator died after that day.

"Heirs of A.," A. being then alive, may mean the children of A.

A testamentary gift to a class of persons, generally comprehends those living at the time of the death of the testator. And where there is a devise to a fluctuating class of persons, the decease of a part of them in the lifetime of the testator will occasion no lapse in the disposition.

Campbell *v.* Rawdon.

THIS was an action of ejectment for the recovery of the undivided two thirds of lot No. 56, of 80 acres, situated in the Canadian Refugee Tract, in the town of Champlain, Clinton county. The suit was commenced 19th December, 1851. The defendant Sarachon, who did not appear, was tenant, at the time, under the defendant Rawdon. In 1819 one Joseph Bindon was seised in fee of the premises in question, and duly made and executed the following will. "In the name of God, Amen. I, Joseph Bindon, of the town of Champlain, in the county of Clinton and state of New York, being weak in body but of sound memory, (blessed be God,) do make and publish this my last will and testament in the manner following, that is to say: first, I give and bequeath to my sons George Bindon, Joseph Bindon, and my faithful housekeeper Jane McCready, all that messuage or tenement in which I now live, with all the household furniture, stock of cattle and buildings, and the land known by number fifty-six, containing eighty acres, to them and their heirs for their use, improvement and equal emolument during their natural lives, and after their decease, to the heirs of John Bill of the city of New York, chairmaker. Also, I give and bequeath to my sons George Bindon and Joseph Bindon, an equal share to each of them forever, all the rest and residue of my real and personal estate I may be seised and in possession, and I make my friends Doctor James W. Wood, Daniel D. Taylor, Esq. and Ezra Thurber, Esq. of the town of Champlain, my executors of this my will, to take and see the same performed according to my true intent and meaning.

In witness whereof, I, the said Joseph Bindon, have to this, my last will and testament, set my hand and seal this fifteenth day of Oct. in the year of our Lord one thousand eight hundred and nineteen."

The testator died in May, 1832, and the will was duly proved as a will of real and personal estate, 31st August, 1832. The George Bindon mentioned in the will died intestate in 1825, without issue. Jane McCready also died intestate, October, 1843, without issue. Joseph Bindon jr. was still alive but without issue. At the date of the will, the said John Bill, mention-

ed therein, was a resident of the city of New York. He died intestate in 1826, leaving four children, his heirs at law. The plaintiff, Mrs. Charlotte Batey, was one of his daughters ; and the plaintiffs Charlotte Ann Campbell, Mary Cook and George F. Cook, were heirs of another daughter, Almira, who married William Cook and died intestate in New York, in November, 1837. Benjamin, a son, died intestate in New York, in 1828, without issue ; and Julia Ann, the 4th child, died intestate in 1848, leaving no children.

The defendant Rawdon claimed title to the premises under a deed from Freeman Rawdon,. assignee in trust for the benefit of the creditors of Nathan Webb and Ralph Rawdon. Said Nathan Webb obtained a judgment, which was signed March 2d, 1829, for $475.26 damages and $51.31 costs, against Joseph Bindon senior, which judgment, after the death of Joseph Bindon senior, was revived by *scire facias*, and judgment obtained and execution issued thereon, 2d November, 1833, by virtue of which a levy was made on the premises in question, and a deed was given of them by the sheriff to said Nathan Webb, dated April, 15th, 1835, N. Webb being the purchaser. N. Webb and R. Rawdon, after several intermediate conveyances of the premises, made an assignment of all their property real and personal, and the property of each of them, including these premises, to Freeman Rawdon, for the benefit of creditors. Freeman deeded to the defendant in September, 1848.

The writ of *scire facias*, after reciting that Joseph Bindon had devised his lands to " his sons George Bindon (now deceased,) Joseph Bindon and Jane McCready his housekeeper and their heirs, and after their decease then to the heirs of John Bill, chairmaker, of the city of New York," commanded the sheriff to make service upon " the said Joseph Bindon and Jane McCready, survivors of George Bindon, and the heirs of John Bill." The return of the deputy sheriff stated that he " gave notice and made known to Joseph Bindon and Jane McCready to appear before the said justices of the supreme court of judicature aforesaid, at the day and place in the said writ contained, to show cause as by the said writ required, and

as the sheriff, is therein commanded, and served on them copies of said writ of *scire facias* by delivering the same personally to the said Joseph and Jane;" and also further returned that the said George Bindon was dead, and the heirs of John Bill had not any thing by which he could give them notice, and could not be found in his bailiwick.

The premises were proved to be worth $150 a year.

The cause was tried at the Clinton circuit, in July, 1852, before the Hon. C. L. ALLEN, a jury having been waived by the parties. The above facts appeared in evidence; and as conclusions of law from the said facts the judge found,

1st. That by the will Joseph Bindon junior, George Bindon and Jane McCready, were made tenants in common, for life in said lot No. 56, and that the heirs of the said John Bill were entitled to said lot in fee upon the death of the said devisees, and to the undivided share of each devisee, at the time of his or her death. That the said George Bindon having died before the testator, the life estate of the said George never took effect, and that the plaintiffs were seised in fee of and entitled to the one undivided third part of said lot No. 56, according to their respective rights and interests therein as hereafter specified, at the death of the testator on the 9th day of May, 1832, and that the said plaintiffs were seised in fee of and entitled to another undivided third part of the said lot No. 56, at the death of Jane McCready in October, 1843. 2d. That Nathan Webb acquired no title or interest in said lot No. 56, by virtue of the sheriff's sale on the execution issued upon the judgment of revival by *scire facias*, other than the life estate of Joseph Bindon and Jane McCready, and the defendant under his title acquired no greater interest, but was entitled to the possession of one undivided third part of said lot during the life of the said Joseph Bindon, junior. 3d. That the plaintiffs were entitled to recover in this action the possession of two equal undivided third parts of said lot No. 56, according to their respective rights therein, to wit : the said Charlotte Batey one half of the equal undivided third part of said lot No. 56, and the remaining plaintiffs each one equal undivided third part of one half of two

equal undivided third parts of said lot No. 56, and that said plaintiffs were entitled to recover against the said defendant the sum of $600, for the use of said equal two undivided third parts of said lot No. 56, to be divided among them according to their respetive interests above specified. From the judgment entered in accordance with the above conclusions the defendants appealed.

*G. M. Beckwith*, for the defendants.

*G. A. Simmons*, for the plaintiffs.

*By the Court*, HAND, P. J. It is not pretended that the plaintiffs can recover if they are concluded by the judgment on the *scire facias* and the sale of the property by the sheriff. It is said that an execution without a *scire facias* is not void, but voidable only by a writ of error, and cannot be questioned in a collateral suit; and till reversed is a good justification. (*Patrick* v. *Johnson*, 2 *Lev.* 493; *S. C.* 2 *Lutw.* 925. *Jackson* v. *Delancy*, 13 *John.* 537. *Jackson* v. *Robins*, 16 *id.* 537.) But there is another rule, that where a person not a party to the record derives a benefit by, or becomes chargeable to, the execution of it, there must be a *scire facias* to make him a party to the judgment. (*Penoyer* v. *Bruce*, 1 *Salk.* 319. 2 *Saund. R.* 6, *n.* 1. *Id.* 72, *n.* 4. *Woodcock* v. *Bennett*, 1 *Cow.* 611.) And where a judgment is revived against real estate by writ of *scire facias*, by our statute, the right of any person therein, not made a party to the writ, shall not be impaired or affected by such revival, unless he claim title from the tenant of such real estate who was duly made a party thereto. (2 *R. S.* 577, § 5.) Writs of scire facias, in such cases, formerly were brought against the heir or devisee and terretenants. And "terretenant" in a scire facias, is said to mean the owner in fee. (*Parke, B.* 5 *M. & W.* 326. 2 *Saund.* 9 *a*, *n.* 9.) But now it may be brought against one who actually occupies the estate, and claims an interest therein whether in fee or for life, or for years. (2 *R. S.* 577, § 4.) In the case now under consideration, the plaintiffs

did not actually "occupy" the land, but the writ ran against "the heirs of John Bill," and the sheriff returned that the latter had nothing by which he could give them notice, in his bailiwick, and that they were not found therein. They may, perhaps, be said to have been parties to the writ. And, indeed, language as explicit as that used in § 5, has received a somewhat qualified interpretation. (*Post v. Arnot,* 2 *Denio,* 344.) But the revisors evidently suppposed what they believed to be the old rule, was to be abrogated. (*Notes* 3 *R. S.* 786, 2*d ed.*) And upon the whole I think the judgment did not bind the plaintiff if they had an interest in fee or for life ; even if it may be deemed, in form, a judgment against them ; and the decision at the circuit was therefore right upon this point. (2 *R. S.* 377. *Darcy* v. *Ketchum,* 11 *How. U. S. R.* 165.)

This brings us to the consideration of the will of Joseph Bindon senior.

My first impressions were that the testator's sons, Joseph and George, and Jane McCready took an estate in fee, subject, perhaps, if in this·respect the will is to be construed under the revised statutes, to a limitation over in case they died without issue. Two°of them were heirs of the testator; and the heirs at law cannot be disinherited by will, except by express words or necessary implication ; (*Willes,* 140 ; 6 *Cruise,* 159 ; *Ram on Wills,* 257 ;) and the words, "to them and their heirs," &c. if they mean any thing, are very important ; and besides, the sons were then almost in the morning of life, and there was no apparent motive for giving his property to strangers at their decease. I understand Mr. Justice Cady still considers this the true construction ; and I have come to a different conclusion with considerable difficulty. However, the explicit language "during their natural lives, and after their decease to the heirs of John Bill," the other members of the court are inclined to think, was intended to limit the interest of the·three first takers, to a life estate. George died before his father ; consequently the devise to him lapsed ; and his share would have descended to the heir, his brother Joseph, if there had been no devise over. (*Van Kleeck* v. *Dutch Church of N. Y.* 20 *Wend.* 457. 7 *Hill,* 353.

Campbell *v.* Rawdon.

2 *id.* 516. 4 *Kent,* 542. 1 *Jarm. on Wills,* 555.) It would have been otherwise in case of a joint tenancy. (1 *Jarm.* 295.) But words of equality denote a tenancy in common; (6 *Cruise,* 407, 409, 410; 2 *Jarm. on Wills,* 161, 2;) and the devise was to them for their equal emolument, &c. And without these words the result would have been the same. (1 *R. L.* 54. 1 *R. S.* 727, § 44. 4 *Kent,* 361.) Of course, there is nothing in the objection that the devise was void because the power of alienation was too long suspended. There was in fact, as we shall see, no suspension; and if there had been, as the first takers were tenants in common, it would have been for one life only. The old rule allowed any number of lives in being, a reasonable period for gestation, and 21 years. (4 *Ves.* 319.) And within the provisions of the revised statutes; if there had been a joint tenancy, as one of the three died in the lifetime of the testator, the devise would have been valid. (*See* *Lang* v. *Rophe,* 5 *Sandf. R.* 363.)

If there was a valid devise over, the share of George did not go to the heir or residuary devisee, but, on the death of the testator, vested in those persons entitled to take under the designation of "the heirs of John Bill." (*Mowatt* v. *Carow,* 7 *Paige,* 328. *Walker* v. *Main,* 1 *J. & W.* 1. 1 *R. S.* 723, § 113; 725, § 32. 2 *Vern.* 116, 207, 378, 611. *And see Norris* v. *Beyea,* 15 *Barb.* 416; *Jackson* v *Staats,* 11 *John.* 337; 11 *Wend.* 259; 15 *Barb.* 621; 2 *Keen,* 284; 1 *Russ. & My.* 639.) They do not claim by way of substitution, but under an original substantive gift. (2 *Eng. L. & Eq. Rep.* 243. 15 *id.* 498.) And the plaintiffs claim that one third of the lot passed to them or those under whom they claim, in fee on the death of the testator, and one third more on the death of Jane McCready. And it becomes necessary to inquire, what interest, if any, passed under the clause of the will "and after their decease to the heirs of John Bill" &c. and to whom?

John Bill was living at the time the will was executed; and of course, in a technical sense, could then have no heirs. And some special designation, as "now living," seems to have been thought necessary in such cases. (6 *Cruise,* 184.) However,

the word " heirs" in this case, I think, may be considered as synonymous with " children." (*Londay* v. *Hopkins, Ambler,* 273. *James* v. *Richardson,* 1 *Eq. Ca. Ab.* 214. *Right* v. *Creber,* 5 *B. & C.* 866. *Doe* v. *Perratt, Id.* 48. 2 *Jarm. on Wills,* 1 *to* 25, *and cases there cited.*) But those only, took an interest who were living at the time of the death of the testator. A gift to children " now living" is a gift to those only, living at the date of the will. But a gift to children to take effect at the testator's death, or to a class of persons, as a general rule, comprehends those living at his death, unless the case be one within the statute giving it to a surviving child or children; (2 *R. S.* 66, § 52;) which is not this case. And where the devise is to a fluctuating class of persons, the decease of any of them in the lifetime of the testator will occasion no lapse in the disposition. (*Doe* v. *Sheffield,* 13 *East,* 536. *Jackson* v. *Staats,* 11 *John.* 337. *Morton* v. *Morton,* 8 *Barb.* 21. *Jenkins* v. *Freyer,* 4 *Paige,* 47. 1 *Jarm.* 295.) The devise over, therefore, was to the children of John Bill living at the time of the death of the testator.

But if this will is to be construed, as the law was before the revised statutes, I think they took only a life estate. There are no words limiting an estate in fee simple, or showing an intent to pass an estate of inheritance to the children of John Bill. (*Harvey* v. *Olmsted,* 1 *Coms.* 483. *S. C.* 1 *Barb.* 102. *Edwards* v. *Bishop,* 4 *Comst.* 61. *Olmstead* v. *Olmstead, Id.* 56. *Vanderwerker* v. *Vanderwerker,* 7 *Barb.* 221. *Lippen* v. *Eldred,* 2 *Barb.* 130. 2 *Jarm. on Wills,* 170.) The word " heirs" was not necessary; nor other express words of inheritance. (*Id.* 6 *Cruise,* 237.) But the intention to give a fee must appear in the will; and I think does not in this case.

This will was executed in 1819, and the testator died in 1832; and it is material to inquire how far, if at all, it is affected by the revised statutes. In *Depeyster* v. *Clendining,* (8 *Paige,* 295,) the will was made before 1830, and the testator died long after, and the chancellor said the validity of the trust, and the provisions of the will, must depend upon the law as it was when

the will took effect by his death. And in *Bishop* v. *Bishop*, (4 *Hill*, 138,) it was held that a devise in fee to a son, who died in the lifetime of the testator, did not lapse, but vested in the children of the son, the testator dying after, though his will was made before 1830. And in *Sherman* v. *Sherman* this principle of construction was recognized, though its application was unnecessary in that particular case. (3 *Barb.* 385.) But in *Ellison* v. *Miller*, it was held that a will executed before the revised statutes took effect, did not pass lands acquired after 1831. (11 *Barb.* 332.) And finally, the court of appeals, in *Parker* v. *Bogardus*, (1 *Selden*, 309,) unanimously held, that a will of all his estate, real and personal, executed in 1814, disposed only of the real estate then owned by the testator, although he died in 1841, and purchased the land in question in 1825. The case was considered as coming within § 77 of the first title of chapter 6, part 2, entitled " Of wills and testaments of real and personal property, and the proof of them," (2 *R. S.* 68,) which declares that " the provisions of this title shall not be construed to impair the validity of the execution of any will made before this chapter shall take effect, or to affect the construction of any such will." And consequently that section 5 of that title, providing that a will by a testator in express terms of all his real estate, &c. should be construed to pass all the real estate which he was entitled to devise at the time of his death, (2 *R. S.* 57,) did not apply ; thus leaving the construction of the will in this respect as at common law. (*See Jackson* v. *Potter*, 9 *John.* 312.) The statute relied upon to give a fee in this case, it is true, is not found in the above title, to which reference has been made. It is as follows : " The term ' heirs,' or other words of inheritance, shall not be requisite to create or convey an estate in fee ; and every grant or devise of real estate, or any interest therein, hereafter to be executed, shall pass all the estate or interest of the grantor or testator, unless the intent to pass a less estate or interest shall appear by express terms, or be necessarily implied in the terms of such grant." (1 *R. S.* 748, § 1.) It is not clear, considering all its provisions, that this will would have given a fee to the children of John Bill if this section were ap-

Campbell *v.* Rawdon.

plicable. But I think it is not. It has often been said that a will must take effect according to the law as it is at the death of the testator; and that it speaks at that time. (18 *Wend.* 294. *Depeyster* v. *Clendining*, *supra.* *Sherman* v. *Sherman*, *supra.* *Adams* v. *Wilbur*, 2 *Sumner*, 266. *Beable* v. *Dodd*, 1 *T. R.* 193, 204. 1 *Ves.* 53.) And when an expectant estate is created by devise, the time of the death of the devisor is to be deemed the time of the creation of the estate. (1 *R. S.* 726, § 41.) No doubt the rights of the devisee, and of the heirs, accrue on the death of the testator or ancestor. (2 *Smith's L. Cas.* 403.) And a devise, in one sense, speaks at the death of the testator. But, as Mr. Ram significantly asks, "what does it speak? Does it say more than what the testator said when he made his will?" (*Ram on Wills*, 108.) We have seen that, unless executed since the revised statutes took effect, it does not speak at the death of the testator, as to lands acquired after it was executed. In that case, the old rule holds; "that it is so far testamentary, that it is fluctuating, ambulatory, and does not take effect till after death; but it is in the nature of a conveyance; being an appointment of a specific estate." (*Ld. Rosslyn in Bridges* v. *De Chandos*, 2 *Ves. jun.* 427. *And see the notes at the end of that case.*) And why should a different rule prevail as to the *quantum* of interest? That may be much more important. It has often been said that the intent of the testator ought to be taken as things stood at the time the will was made. (*Willes, C. J., in Doe* v. *Underdown, Willes*, 297. *Abner* v. *Miller*, 2 *Atk.* 597. 6 *Madd. R.* 84. 1 *Jarm. on Wills*, 277, and note et seq. *And see Root* v. *Stuyvesant*, 18 *Wend.* 257.) And Mr. Ram remarks, that the effect of a will may be changed by events happening since it was published, as by lapsed devises, &c. "but not the intention; for then it would not be the intention expressed in the will." And no doubt, for certain purposes, the time of the publication of the will and of the death of the testator are both important.

But again, the language of this section, dispensing with the word "heirs," and declaring that a devise of real estate shall pass all the estate of the devisor, &c., (1 *R. S.* 748, § 1,) by its

terms, is not applicable to wills executed before the revised statutes took effect.    It is confined to grants and devises " hereafter to be executed."    There can be no doubt what is meant by the execution of a will.    (2 *R. S.* 63, § 40.    1 *Vict. ch.* 26, § 9.)

If this construction of the will is right, the three children of John Bill, living at the time of the death of the testator, on his death, took a life estate as tenants in common in the land in question; to one third of which they then had an immediate right of possession by the previous death of George Bindon; and if they had survived her, they would have become entitled to the possession of another one third part thereof, on the death of Jane McCready.    But as they took only life estates as tenants in common, their children can take nothing under the will; nor was there any right of survivorship among the children of John Bill.    Mrs. Batey was the only survivor at the time this suit was commenced, and she was then entitled to recover possession of one third of two thirds of lot fifty-six, the land in question.

The counsel for the defendant Rawdon also insists, that there can be no recovery against him, because it was not proved that he was in possession.    His answer admits that he is in possession; and probably the other defendant was a mere servant or agent.    And besides, if it were otherwise, as Rawdon only claims title and defends, it may be presumed that he does so as landlord.

The judgment must be set aside, and there must be a new trial, with costs to abide the event.

[FRANKLIN GENERAL TERM, September 4, 1854.    *Hand, Cady, C. L. Allen* and *James*, Justices.]