GARRETT VAN DERZEE *vs.* JOHN B. VAN DERZEE.

Notwithstanding the introductory words of a will evince an intent to dispose of all the testator's worldly estate, this is not sufficient to enlarge the estate subsequently divided, into a fee, unless the words of disposition, in the *clause of devise*, are connected, in terms or sense, with the introductory clause, and import more than a mere description of the property.

Where a testator, by his will, executed before the revised statutes took effect, devised a farm to his son Storm, without words of inheritance or perpetuity, *held* that the devisee, under this clause of the will, took only a life estate.

*Held also*, that the following clause in the same will, "Further, I make my wife master of one third of my aforesaid estate as long as she remains my widow, and after her marriage or death to be and belong to my aforesaid son Storm," did not have the effect to enlarge the life estate previously given to Storm, into a fee.

Where a portion of a farm devised had been held, possessed and claimed by the testator since 1769, and the residue since 1790, and was so held and claimed by his successors, after his death, as under a lease in fee from one V. R., and rent had always been paid for the entire portion in that character, and such a title had been uniformly recognized by V. R., the landlord, *Held*, that the interest of the tenant or lessee in fee, as such, had been held and claimed adversely, which made a perfect title by adverse possession; and that the title and claim and possession of the tenant and his heirs thus derived and held, having been uniform, unbroken and perfect for so long a period down to the present time, the landlord could never dispossess them so long as they complied with the terms of the lease, or the conditions of the tenancy.

Accordingly *held*, that the testator had an interest in the farm, which could pass by the terms of his will.

THIS was an action of ejectment, for the recovery of one-seventh of 263 acres of land in the town of Bethlehem, Albany county. Each party claimed under Cornelius Van Derzee, jun., the father of the plaintiff, and the grandfather of the defendant; the plaintiff claiming as heir at law, and the defendant under a devise to Storm Van Derzee. Cornelius Van Derzee, jun., died in 1800, in possession of the premises, and claiming to own them. His will was made and proved the year of his death. The premises in question were devised to the defendant's father, Storm Van Derzee, either *for life,* as the plaintiff insisted, or *in fee,* as claimed by the

defendant. Storm Van Derzee died on the 30th of November, 1853, and the plaintiff's title then accrued, unless the devise carried the fee. The will in question was as follows:

"As for that worldly estate wherewith it has pleased God to bless me, I dispose of it as follows:

First. I give unto my loving Wife Annanty my Negro man Prince and my red Mair to her & her hiars, further I Give unto my three Dauters Elizibeth Rauchel & Anney & to thair heairs Each Two Milk Cows.

Further I give unto my five Dauthers, Easter Elizibeth Affte Raichel & Anney & to thair hiars Each Twenty Dollers, I bequeth & Give unto my son Walter & John Van Der Zee & to thare hears Each Two hundred Dollers.

I further give unto my son Storm Vanderzee One hundred & Twinty Acors of land which is the farm I now live on & also the new possession joining to my farm lately run out by Jacob Winne. I also give unto my son Garret Van Derzee One Dollar, I further give to my son Storm Van Derzee all my farmen Utensiils, I also give all my household furniture to my loving wife Annauty as long as she remains my widdow. After he marriage or Deth I make it to my five Dauters Easter Elizibeth Affe Raichel & Anne to be equilley divided between them. I further give unto my son Walter & John Van Der Zee & to my five Dauters Easter Elizibeth Affe Ruchel and anne all the remainder of my Horses & Cows to be equilley divided between them. Further I make my Wife Master of one third Of my aforesaid Astate as long as she remains my Widdow & after her Mariage or Deth to be & belong to my aforesaid son Storm Van Der Zee the above remainder of my Horses and Cows to be the property of my wife Annautey Vanderzee as long as she remains my Widdow after her Marriage or deth to my aforesaid two sons & five Dauters and to there hears for ever. further the Cows & horses must not be sold or embeseled by my wife, but be & remain for my aforesaid Two sons and five Dauters."

The plaintiff demanded possession of his share, which

the defendant refused, claiming title to the whole, and this action was accordingly brought. The cause was tried at the Albany circuit on the 12th of December, 1855, before Justice HARRIS and a jury. The defendant moved for a nonsuit, on the grounds: 1. That Storm Van Derzee was entitled to the fee under the will. 2. That Cornelius Van Derzee, jun., the testator, had no interest in the land capable of being inherited. The motion was denied. No question being raised to be submitted to the jury, Judge Harris directed a verdict for the plaintiff for one-seventh of the premises, subject to the opinion of the court at general term. The jury assessed the plaintiff's damages at $121.75. The testator left a widow, four sons and five daughters. The widow died in 1825. Two of the children died without issue. At the time of the trial the plaintiff was the only surviving son, and the other heirs were Anne, the only surviving daughter, and the respective children of Storm and John Van Derzee, and of the three deceased married daughters. Thus the plaintiff was entitled, as heir at law, to one-seventh of the property, and of the damages for withholding possession. The farm of the testator originally embraced about 293 acres. One lot of 10 and another of 20 acres were sold to John Soop. The residue of the premises embraced about 263 acres. Of the 293 acres, 121 were held under a lease in fee from Stephen Van Rensselaer. By the clerical omission of one of the courses in the original lease the lines did not close; but among the ancient muniments of the title attached to the original lease in the office of General Van Rensselaer, was found the evidence of the discovery and correction of the error in 1771, in accordance with the original map and field book, and with the lines indicated by marked trees at the time of the survey and execution of the lease. The Van Rensselaer maps of 1771, 1790 and 1845, accord with the corrected description. The testator, his son, and the defendant, have always claimed and held in accordance therewith. The remaining 172 acres was the portion of the testator's farm, de-

scribed in his will as "the new possession." No written lease or paper title for this portion of the farm has been discovered. It was embraced, however, in the map and survey of the testator's land, made by Winne for Stephen Van Rensselaer, in 1790. It was held and claimed by the testator in his lifetime. It was devised as his, in his last will. The rents were paid to Van Rensselaer as upon a lease in fee, by the testator, the life devisee, and the defendant. It was claimed by the defendant and his father, *under the will* of Cornelius Van Derzee, jun. No question was made upon the trial in regard to this portion of the land, as distinguished from the rest of the farm. Storm Van Derzee made no specific devise of the farm in question, but by virtue of a general gift of all his "real and personal property," the defendant claimed through his father's and under his grandfather's will.

*John K. Porter*, for the plaintiff.

*John H. Reynolds*, for the defendant.

*By the Court*, HOGEBOOM, J. Looking at the will in question, irrespective of legal rules, I have very little doubt that the testator intended to give Storm Van Derzee a fee in the premises in controversy. But applying the test that the intent of the testator must be sufficiently expressed on the face of the instrument, and must be consistent with the rules of law, I am constrained to come to a different conclusion.

The introductory words doubtless evince an intent to dispose of all the testator's worldly estate, but this is not sufficient to enlarge the estate subsequently devised into a fee, unless the words of disposition in the *clause of devise* are connected, in terms or sense, with the introductory clause, and import more than a mere description of the property. (*Barheydt* v. *Barheydt*, 20 *Wend.* 576. *Doe* v. *Buckner*, 6 *T. R.* 610. *Denn* v. *Goshen*, *Cowp.* 657. *Doe* v. *Wright*, 8 *T. R.* 64. *Loveacres* v. *Blight*, *Cowp.* 352. *Olmsted* v. *Harvey*, 1 *Barb.* 109 ; *S. C.*, 1 *Comst.* 483. *Jackson* v. *Harris*, 8 *John.* 141.)

Van Derzee *v.* Van Derzee.

The clause of the will which devises the property in question to Storm Van Derzee contains no words of inheritance or perpetuity, and upon well established principles applicable to cases arising, as this did, before our revised statutes took effect, in 1830, confers upon the devisee only a life estate. (*Wheaton* v. *Andress*, 23 *Wend.* 452. *Van Alstyne* v. *Spraker*, 13 *id.* 578. *Burlingham* v. *Belding*, 21 *id.* 463. *Jackson* v. *Wells*, 9 *John.* 222. *Jackson* v. *Embler*, 14 *id.* 198. *Ferris* v. *Smith*, 17 *id.* 221. *Olmstead* v. *Olmstead*, 4 *Comst.* 56. *Mesick* v. *New*, 3 *Seld.* 163.)

The only other clause of the will which can be relied on, to enlarge the life estate into a fee, is the following : " Further, I make my wife master of one third of my aforesaid estate as long as she remains my widow, and after her marriage or death to be and belong to my aforesaid son Storm Van Derzee." I think this does not have that effect, for the following among other reasons : 1. The words " aforesaid estate" seem to refer to the estate or land before given to Storm Van Derzee in the clause previously mentioned. They naturally refer to an estate before given to Storm. They apparently refer to *real* estate, and are probably a provision in substance like that for a widow's dower. They could not well refer to an estate *in fee*, for they are restricted to an estate during *life* or *widowhood*. They do not seem to refer to the testator's whole " worldly estate ;" for a devise to the widow, of one third of the whole real and personal estate, would directly conflict with several previous devises to other persons, and would also, in some measure, conflict or fail to harmonize with a devise of horses and cows to the widow for the same term, immediately following the devise in question. 2. The words " aforesaid estate" seem to be words of description or of reference, and not designed to mark the quantity or quality of the estate devised. In such case they are not held necessarily to embrace the testator's entire interest in the property, but to take the form and character of the estate to which reference is made. (*Frogmorton* v. *Wright*, 3 *Wils.* 418. *Doe* v. *Ravell*, 2 *Cr.*

*& Jervis*, 621. *Doe* v. *White*, 1 *Exchequer Rep.* [*Welsby, Hurlstone & Gordon,*] 525, 535. *Morrison* v. *Sempler, Binney*, 97. *Spraker* v. *Van Alstyne*, 13 *Wend.* 578.) 3. There is nothing, therefore, in the words "aforesaid estate," necessarily or fairly importing an intent by the testator to employ them as descriptive of the quantity of his interest; and this conclusion is strengthened by the fact that he has used words of inheritance in other parts of the will, in reference to other property. 4. If these words were construed as being descriptive of the quantity of interest, instead of terms of reference or identification of property, they would only enlarge into a fee the previous life estate as to the *one third* devised to the widow during her life or widowhood; for the words fairly limit the remainder to that one third. Such could scarcely have been the testator's intention. 5. The estate of Storm is not enlarged into a fee simply by being a remainder limited upon a previous life estate. Successive life estates were not uncommonly limited upon the same property in *express words;* and therefore there should be no implication against them as improbable. Besides, it has been held in repeated instances, that where successive estates were thus created by will without words of inheritance, they must (the latter estate as well as the first estate) be construed as simply estates *for life.* (*Hay* v. *Earl of Coventry*, 2 *T. R.* 83. *Compton* v. *Compton*, 9 *East*, 267. *Doe* v. *Clark*, 5 *Bos. & Pull.* 343. *Doe* v. *Wright*, 8 *T. R.* 64. *Ferris* v. *Smith*, 17 *John.* 221. 2 *Powell on Devises*, 377. *Edwards* v. *Bishop*, 4 *Comst.* 61. *Harding* v. *Roberts*, 23 *Eng. Law and Eq. Rep.* 452.)

Although, therefore, if we allowed ourselves to indulge in conjectures, we might very plausibly infer a probability that the testator, by the will in question, designed to pass a fee to Storm Van Derzee; especially as the will contains no residuary clause; we are nevertheless bound, I think, by the rules of law, to interpret the will as only conferring upon him a life estate.

I discover no reasonable foundation for the remaining posi-

Van Derzee *v.* Van Derzee.

tion assumed by the defendant's counsel, that the testator had no interest in these lands which could pass by the terms of this will. A portion of the property has been held, possessed and claimed by the testator and his successors since 1769, and the residue since 1790 as under a lease in fee. Rent has always been paid for the entire portion in that character. Such a title has been uniformly recognized by the landlord. It has been held adversely to the landlord; that is, the interest of the tenant or lessee in fee as such, has been so claimed and held, and that makes as perfect a title by adverse possession as if the Van Derzees had claimed the whole title and the entire interest. It has been held as a lease or rent farm, and from the moment that the lease was made, or rent paid and received, the title of the tenant to the farm, *as tenant,* to the extent of the qualified ownership resulting from the relation of landlord and tenant, was as perfect and as adverse to the landlord's title or claim to the tenant's interest, as is the title of the grantee in a deed perfect against and hostile to the title of the grantor, from the moment. the deed is executed. (*Bradstreet* v. *Clarke,* 12 *Wend.* 602. *Osterhout* v. *Shoemaker,* 3 *Hill,* 513. *Averill* v. *Wilson,* 4 *Barb.* 180.) The title and claim and possession of the Van Derzees, thus derived and held, has been uniform, unbroken and perfect from the early periods above named to the present time. The landlord can never dispossess them so long as they comply with the terms of the lease or the conditions of the tenancy. I cannot see any pretense for saying that here there was no inheritable interest. There is nothing in *Bigelow* v. *Finch* (17 *Barb.* 394) which conflicts with this view. The disposition made of the case at the circuit was therefore right, and there must be judgment for the plaintiff upon the verdict.

[ALBANY GENERAL TERM, September 5, 1859. *Wright, Gould* and *Hogeboom,* Justices.]