# COURT OF ERRORS AND APPEALS,

## JANUARY TERM,

## 1889.

———•———

### DOE DEMISE OF SPENCER HITCH ET. AL. *v.* WELLINGTON PATTEN.

#### *Wills—Construction of—Estate Conveyed—Fee.*

The heir at law is not to be disinherited except by express words in the will or by necessary implication arising therefrom.

Although a general devise of land, or a devise of land without words of limitation, gives to the devisee an estate for life only, if no intention to the contrary on the part of the testator is sufficiently expressed or indicated in the devise itself, or in some other part of the will, yet, if in such a devise, or in any other part of the whole will, the intention of the testator to give him a larger estate is sufficiently expressed or indicated, the devisee, by virtue thereof, will take such larger estate.

The introductory clause of the will, though not sufficient of itself to enlarge such a general devise, might be taken in question with the rest of the will to ascertain the real intent of the testator.

The introductory clause of a will recited : " Touching such worldly estate wherewith it hath pleased God to bless me, * * * I give and dispose of in the following manner." Then followed a number of legacies to each of the testator's children and heirs at law except his son, S, each bequest ending with the words, " and no more." Lastly, a devise to S of all his realty, without words of limitation, and omitting the clause, " and no more." *Held*, that S took a fee.

SAULSBURY, Chancellor, dissenting.

(*January 16, 1889.*)

ERROR to Superior Court, Sussex County.

Ejectment by Spencer Hitch, John H. Hitch, Mary Collison, and Arcadia Postles, against Wellington Patten. The following will of Spencer Hitch, Sr., was admitted to probate, February 21, A. D. 1797 :

*Sussex County, State of Delaware.* In the name of God, Amen, this fifth day of February, one thousand seven hundred and ninety-seven, I, Spencer Hitch, of the County and State afsd., being in a very low state of body, but of perfect mind and memory, and in my proper senses, thanks be to God, and calling to mind the mortality of my body, and knowing that it is appointed for all men to die, do make, ordain, publish, and declare this to be my last Will and Testament; that is to say, I give and recommend my soul to the hands of Almighty God that give it, and my Body to the Earth, to be buried in Christian manner, at the old burying place where I now live, and as touching such wordly estate wherewith it hath pleased God to bless me with in this life, I give and dispose of in the following manner : *Item.* I give and bequeath to my well-beloved wife, Sophia Hitch, the third part of my Estate, after all my just debts are paid, or the third of my Estate, and no more. *Item.* I give and bequeath to Sarah Snellen, one hundred feet square of ground at the Norwest side of my Hous where the garden now is, and the back small rume in my hous, and one Bed and Bedin, and no more. *Item.* I give and bequeath unto Anna Hitch, my daughter, one Cow & Calf, one Bed & Bedin, and no more. *Item.* I give and bequeath unto Lilly Hitch, my daughter, one Cow & Calf, one Bed and Bedein, and no more. *Item.* I give and bequeath unto Sovereign Hitch, my son, one horse and Saddle, and no more. *Item.* I give and bequeath unto Nelly Hitch, my Daughter, one Cow & Calf, one bed and bedein, and no more. *Item* I give and bequeath unto William Hitch, my son, one horse, one Bed and Bedein, and no more. *Item.* I give and bequeath unto Clement Hitch, my son, one Horse, one Bed and Bedein, and no more.

*Item.* I give and bequeath unto Elget Hitch, my son, one Cow & Calf, one Bed and Bedein, and no more. *Item.* I give and bequeath unto Polly Hitch, my Daughter, one young horse and mare, one Bed and Bedein, and no more. *Item.* I give and bequeath unto Spencer Hitch, my son, all the tracks or pssles of land belonging to or that I am possessed with, And further, I do hereby appoint and ordain Sophia Hitch, my daier wife, my hole and sole Executor of this my last Will and Testament, and hereby revoking all former Wills. In Witness whereof, I have set my hand and affixt my seal the day and year above written.

his

" SPENCER X HITCH.    [Seal.]

mark

" Signed, Sealed, and Acknowledged, in presence of us :
    " WILLIAM MASON.
    " GILLIS HITCH."

Spencer Hitch, Jr., the devisee, died A. D. 1873. Suit was brought by the plaintiffs in the court below on March 28, A. D. 1885. The plaintiffs are children of Clement Hitch, deceased, one of the sons and legatees of the testator, and they contend that Spencer Hitch, Jr., took but a life-estate under the will of his father. The defendants contend that Spencer Hitch, Jr., took a fee-simple under the will. In the court below,

COMEGYS, C. J., charged the jury as follows :
· " This case presents one of those questions very difficult to deal with in controversies about title to land, as many of such grow out of the ignorance of men who either will draw their own wills and testaments, or employ some one to do it pretending to knowledge of such business, but having none, or very little· The question is the old one of the effect of other parts of a will to interpret the language of a testator which, taken by itself, would need no interpretation at all. It is a well-established rule of law that a devise to one of a certain tract or parcel of land, or tracts of

land or (as in this case) 'all the tracts or parcels of land belonging to or that I am possessed,'—meaning 'belonging to me, or that I am possessed of,'—conveys nothing but a life-estate to the devisee; these word have no other signfication than mere description of the subject of the devise; in other words, the body of the land, and not the estate in it. The devise or gift of them is called a 'general devise;' there being no words superadded to them to show how great an estate is meant to be given. In such case the law holds such language to mean or import nothing but a life-estate; because estates in land of different degrees over those of life-tenures are created by very precise language in deeds, called 'words of limitation,' and by what are equivalent words in .a will, that is expressions or words somewhere in it, that show that the testator had a meaning in his mind when he used them,—intended to create such equivalency. In a deed, if it is intended to convey a fee-simple, the words 'heirs' or 'heirs and assigns' must be used; but in a will different words from these,—for example, 'all my estate,' 'all I am worth,' etc.,—will answer the same purpose. So the word 'forever,' added to a devise of lands, will carry a fee-simple also. These are but instances where the law warrants constructions of wills to create the highest estate. In deeds there is no latitude of construction allowed; the requisite formal words must be used to create estates or interests in land greater than a life-time. In both deeds and wills the intention of the maker is the thing sought for. But in the former nothing is allowed to control the use of appropriate words to create an estate, which are their own exponent; in the latter, however, the whole will may be looked over and searched, in doubtful cases, to open to the minds of a court and jury that of the devisor, and show them what he meant by ambiguous expressions, by certain phrases or words, and a single word even, though its ordinary sense may be plain enough. Courts do not always agree, by any means, in determining the sense in which the same words are used in wills; though they do not, or rarely, differ about what is meant by words in deeds, where such are used as indicating

22

the quantity of an estate. In the case before us there is a wide difference of opinion between the learned counsel on each side about the construction to be put upon this old will of 1797; the plaintiff's counsel claiming that, as the devise to Spencer Hitch, the younger, has attached to or accompanying it no words to indicate what estate his father meant to give him, therefore it must be intended that he only designed to give him an estate in the lands devised to him for his life-time; and they point us confidently to the rule, well established, and of great antiquity, that where there is a general devise,—that is, a devise without words of limitation,—fixing the quantity of estate, only the smallest freehold interest passes, —that is, a life-estate. The counsel for the defendant, on the other hand, point us to what they claim to be expressions in the will that control the rule about a general devise, and support their contention that the estate the testator, Spencer Hitch, the elder, meant to give his son, Spencer, was and is in reality a fee-simple, or the largest estate any one can have in lands. You will therefore perceive at once that if the contention of the plaintiffs' counsel, that nothing but a life-estate passed to Spencer Hitch, Jr., is correct, and the proper case upon the facts has been made before you, their clients are now entitled to the possession of the premises with which this suit is concerned, as in fact they have been since the death of the said Spencer, in 1873. So it must be evident to you that, if the contention of the defendant's counsel is the true one, that a fee-simple passed to Spencer by a proper interpretation of the will, the plaintiffs have no sort of title to the property, and never had any. What the proper interpretation of the will of Spencer Hitch, the elder, is, is a question of law, and not one of fact, and is to be answered by this Court. When given, it is to be your guide for the verdict you are to render, as it may be for one side or the other.

" I have already said to you that a general devise, as this to Spencer Hitch, the son, is, by its words carries no more than a life-estate; but there are wills which, in their other language or expressions, show an evident design on the part of those who leave them

to employ such words in a more enlarged sense, and thus to carry out a purpose of giving more than such an 'interest. In fact, I think I am safe in saying that in the great majority, if not in all, of the wills made by men without the aid of professional counsel, where a devise of real estate is made to one without any words specially used to show the kind of estate intended to be given, the testator always means to part with his whole interest in the property. So well founded, I think, is this conjecture, and so in accordance with plain reason is it, that such should be understood, to be one's intention who gives away property without any restraining words, that our legislature, in the year 1849, Vol. 10, 325, passed an act applicable to wills made after the date of its passage, that a general devise of real estate should carry the fee-simple title of the deviser. This fact has, of course, nothing to do with the decision in the case of this will, made near three generations ago, and is only produced to show the public sense of the true meaning of wills of land unaccompanied by any words of limitation. The will before you, as you understand, is a will, so far as the matter in controversy here is concerned, which contains just such a devise as I have been treating of. To determine what that devise means we must look at the whole will, and then draw our conclusions. There are many circumstances which show that it was drawn by an unlearned man, just such a person as many testators employ to prepare their wills, and who are unacquainted with the rules of construction applicable to them. They seek, however, to carry out the purpose of the testator, and employ such language as they think will do it. It would seem to be quite evident from the introductory part of this will that Spencer Hitch, the devisor, intended to dispose, not only of the physical substance or body of his real and personal property, but of the interest therein. Accordingly he says, at the close thereof, ' and as touching such worldly estate wherewith it hath pleased God to bless me with in this life, I give and dispose of in the following manner.' Now, it cannot be disputed that this language shows a design to part absolutely with all of the property

the testator had.    In fact, it is not only an expression, sensibly in-
terpreted, of such design, but the language itself is language of
disposition, and not of a mere purpose of making such disposition.
Still, it is not necessary so to decide.  But keeping in view, though,
the evident purpose, and strictly following the course of decisions,
that introductory words in a will, however, significant of purpose,
will not alone impart a meaning to a general devise of greater am-
plitude than usually assigned to them, yet, when such language is
followed in the will by other words or phrases which would be
bereft of their obvious meaning by holding a general devise to be
restricted to one for life only, those introductory words are allowed
a part in the scheme of construction, as well as the other expressions
or phrases.    Those other expressions, in this will, are the unmis-
takable words, ' and no more,' which terminate the respective de-
vises to the testator's wife, and to each of his children other than
Spencer.    There were eight of such children, to every one of
whom he gave a legacy ; but he added at the end of each disposi-
tion the significant words, ' no more ;' that is, no more, as we inter-
pret them, of his estate, which, in the introductory part of his will, he
declared he gave and disposed of.    Now, as I have said before, the
purpose of the testator would be frustrated entirely, if, notwith-
standing such emphatic language, we should hold the devise to
Spencer, the son, to be but a life-estate; for they would not be en-
titled to more of that estate, which he declared they should not
have.    We therefore use the introductory parts of the will, not to
make an interpretation of the devise to Spencer, but in aid of the
other words in question, which must have their proper meaning
assigned them.    Looking, then, at those definite words of certain
meaning, and the introductory phrase quoted, we think it impossi-
ble to escap e the conclusion that the contention of the defendant's
counsel is well founded and correct, and that Spencer Hitch, the
son, took, by the true construction and interpretation of his father's
will, a fee-simple estate, with the same power as other fee-simple
owners have to dispose of the same.    There is another fact suppor-

tative of this view, which is, that there is no clause in this will de-
vising any residue. Now, when a man undertakes to make a will,
he does not mean ordinarily to die intestate as to his estate, but
rather to be presumed to dispose of the whole of it. Such a pre-
sumtion will not, of itself, define an estate; but when the quantity
of the estate intended to be given is doubtful, surely it is not un-
reasonable to give some weight to it. The real intention of the
testator is the thing to be got at; and courts will go to any length,
short of overturning rules of law or of interpretation, to find it.
As all wills are different, and most of them the product of un-
skilled testators, no course can be taken to find the meaning which
will apply to every case. Accordingly some courts lay hold of
certain language; other courts of other words or phrases; but
never without doing the best in their power to carry an obvious de-
sign of disposition into effect. It was this purpose, animated by a
proper spirit of justice to the design of the deceased testator, that
drew from this court, more than fifty years ago, the decision of the
case of John Cordray's will, tried in this county on appeal from the
orphans' court, a decision which, upon its own circumstances, has
stood unshaken to this day, and will remain, as I think, a noted
landmark in the progress of judicial science of interpretation, giv-
ing evidence, not only of the wisdom of the very distinguished
judges who gave it, but of their quick sense of what is meant by
seeking for the intention of testators. I know of no decision any-
where which shows more enlightened understandings on the part of
those that gave it than this one does, decided so long back as 1834,
when courts were supposed to be nothing if not technical. It is
impossible to distinguish that case from the present one. It follows
from what I have said that the law does not support this action we
are trying, and your verdict should be for the defendant. You
will therefore find the defendant not guilty of the trespass and
ejectment in the declaration mentioned."

There was accordingly a verdict for defendant, and judgment
theron. Plaintiffs bring a writ of error.

*N. B. Smithers,* for plaintiffs in error.

Upon the death of the ancestor, the heir is in by operation of law, and whatever, either of *corpus* or interest, is not taken away from him and given to another, remains in him. In order to pass a fee by a devise of lands there must be words of limination, or tantamount expressions having the same operative meaning. The difference between limitation by deeds and wills is that the former technical words are necessary to pass an estate of inheritance; in the latter, equivalent words will suffice; but equivalent words are as necessary in a will as technical words in a deed, and no words will be sufficient unless they import the gift of an inheritable interest. It is not enough that there shall be probable intention to disinherit the heir, or that a layman would say that such intention was unequivocally manifested. It must be apparent to the legal eye. If the actual, and not the legal, intention were the matter to be determined, the question would be one of fact, and not of law. Nothing is more common than for judges to declare themselves convinced that the construction which they are constrained by law to place on the words of a will is contrary to what the testator intended, but failed to express. From this legal necessity has arisen the maxim *voluit sed non dixit.* Though a testator may have commenced his will with the declaration of his purpose to dispose of his whole estate, or may have given a nominal legacy to his heir, or may have given to the heir a prior estate for life in the subject-matter, or there may be a general devise to one after an antecedent devise for life to another, none of these circumstances, nor all concurring together in the same instrument, will give more than an estate for the life of the devisee in lands devised to him without words of limitation. *Denn v. Gaskin,* Cowp., 657; *Right v. Sidebotham,* 2 Doug., 759; *Doe v. Clarke,* 2 Bos. & P. (N. R.,) 343; *Doe v. Wright,* 8 Term R., 68; *Doe v. Allen,* Id., 497; *Drewry v. Barron,* 11 East, 220; *Pocock v. Lincoln,* 7 E. C. L., 586; *Norris v. Tucker,* 23 E. C. L., 212; *Sewell v. Parratt,* Id.,

211; *Lloyd v. Jackson*, L. R. 2 Q. B. 269; 2 Jarm. Wills, (5th Amer. Ed.,) 267; *Wright v. Denn*, 10 Wheat., 204; *Doe v. Alexander*, 2 Houst., 234; *Dodd v. Doe*, Id., 76; *Doe v. Biddle*, Id., 403; *Doe v. Lampleugh*, 3 Houst., 462; *Van Derzee v. Van Derzee*, 30 Barb. 331, 36 N. Y., 231; *Beall v. Holmes*, 6 Har. & J., 205; *Steele v. Thompson*, 14 Serg. & R., 84.

*Alfred P. Robinson* and *Charles M. Cullen*, for defendant in error.

The great object of inquiry in construing a will is to ascertain the intention of the testator. This intention must be ascertained from the whole will; and the clear intention of the testator, if legal, must prevail. 4 Kent, Comm., *534, *535; Ram, Wills, *64, 8 Law Lib., 35; 1 Rob. Wills, 423; Hawk, Wills, 4; *Cook v. Holmes*, 11 Mass., 528; *Meecalf v. Framingham Parish*, 128 Mass., 374.

The intention must be found in the words of the will, but technical words are not required, and any words will suffice if they show a clear intention, either expressly or by clear implication. 1 Rob. Will, 423; Ram, Wills, 42, 43, etc., 8 Law Lib. 24, etc.

So, more especially, technical words are not required to pass a fee, nor is it necessary that the operative words be used in the devise itself; but such an intention, when clearly gathered from the whole will, will enlarge a general devise to a fee. Harrington, Ch., in *Doe v. Dill*, 1 Houst., 410; *Cook v. Holmes*, 11 Mass., 530, 531.

It is evident from the will itself that the draughtsman of the will and the testator were not only without professional skill, and ignorant of technical terms, but were also generally unlearned, and there can be no doubt that the testator thought he was conveying a fee in the devise in question. Lord Mansfield in *Loveacres v. Blight*, Cowp., 355; Buller, J., in *Doe v. Richards*, 3 Term R., 359; *Kennon v. M'Roberts*, 1 Wash. (Va.,) 96, 103; *Butler v. Little*, 3 Me., 239.

The introductory clause is always adverted to by the court in ascertaining the intention of the testator in subsequent devises, and in this case shows an evident intention of devising the whole estate. *Beachcroft v. Beachcroft*, 2 Vern., 690; *Tanner v. Wise*, 3 P. Wms., 294; *Grayson v. Atkinson*, 1 Wils., 333; *Hogan v. Jackson*, Cowp., 299; *Loveacres v. Blight*, Id., 352; *Smith v. Coffin*, 2 H. Bl., 444; *Wilce v. Wilce*, 7 Bing. 664, 20 E. C. L., 296; *Penwarden v. Gilbert*, 3 Brod. & B. 85, 7 E. C. L., 619; *Knight v. Selby*, 3 Man. & G. 92, 42 E. C. L., 57; *Butler v. Little*, 3 Me., 239; *Kennon v. M'Roberts*, 1 Wash. (Va.,) 99; *Davies v. Miller*, 1 Call, 110; *Wyatt v. Sadler's Heirs*, 1 Munf., 537; *Goodrich v. Hardind*, 3 Rand. (Va.,) 280; *Winchester v. Tilghman*, 1 Har. & McH., 452; *Clark v. Mikell*, 3 Desaus. Eq., 168; *Doe v. Harter*, 7 Blackf., 489; *Charter v. Otis*, 41 Barb., 525; *Jackson v. Merrill*, 6 Johns., 185; *Fox v. Phelps*, 17 Wend., 399; *Vanderzee v. Vanderzee*, 36 N. Y., 231; *Schriver v. Meyer*, 19 Pa. St., 87; *Wood v. Hills*, Id., 513; *Shinn v. Holmes*, 25 Pa. St., 142; *Walker v. Walker*, 28 Pa. St., 46.

In addition to the general expressions of the introductory clause, the fact that the testator mentions and includes each one of his children and heirs in his will, and that he is careful to add to the bequest to each of the others the words " no more," shows conclusively that he intended to, and thought he had, disposed of his whole estate, and had devised a fee to Spencer, Jr. *Cordry v. Adams*, 1 Har. (Del.,) 439. Recognized as the law in similar cases, in *Dodd v. Doe*, 2 Houst., 76; *Doe v. Dill*, 1 Houst., 410; *Shinn v. Holmes*, 25 Pa. St., 144; *Butler v. Little*, 3 Me., 239. " Words are to be construed so as to effectuate dispositions, and to avoid intestacy." 1 Rob. Wills, 424.

The rule that the heir is not to be disinherited except by express terms or necessary implication is not to be applied in this country, where all the children are heirs, to cases where the testator seeks to make distribution between them. *Walker v. Walker*, 28 Pa. St., 46. *Cordry v. Adams*, is directly supported by *Bates v. Clay-*

*ton,* 8 East, 141; *Butler v. Little,* 3 Me., 239; *Winchester v. Tilghman,* 1 Har. & McH., 452; *Clark v. Mikell,* 3 Desaus. Eq., 168; *Doe v. Harter,* 7 Blackf., 488; *Cook v. Holmes,* 11 Mass., 528; *Baker v. Bridge,* 12 Pick., 27.

The words "belonging to, or that I am possessed with," in the devise to Spencer Jr., were used by the testator as expressive, not only of the *corpus* or subject of the devise, but also of his interest in the lands, and, especially when taken in connection with the intention shown in the whole will, are operative to carry the fee. *Smith v. Berry,* 8 Ohio, 366; *Pitman v. Stevans,* 15 East, 505; 4 Kent, Comm., *536; *Fogg v. Clark,* 1 N. H., 163; *Wilce v. Wilce,* 7 Bing., 664, 20 E. C. L., 296; *Shelton v. Alcox,* 11 Conn., 248; *Spear v. Hooper,* 22 Pick., 144; 2 Jarm. Wills, *276.

HOUSTON, J. As the ruling in this case in the court below was made directly on the authority of the case of *Cordry v. Adams,* 1 Har. (Del.,) 439, and the soundness of that decision, under the facts and circumstances of the case, as reported by Judge Harrington, is questioned and denied by the learned counsel for the plaintiff in error in this case, I will, in the first place, remark that no one, I think, who has traced the current of decisions in England on the question of the construction of devises of this kind, from the times of Talbot and Hardwicke, lord chancellors, and Lord Mansfield and Lord Kenyon, chief justices, down to the commencement of the present century, at least, if not to the time of that first reported case of the kind in the courts of this state, in the year 1834, will either be surprised at that decision, or be prepared beyond a reasonable doubt to dissent from it. And the less will he be so, I think, after reading, in connection with the multitude of decisions to which I have before adverted, what Lord Kenyon said on the subject, first, in the casee of *Moor v. Mellor,* 5 Term R., 558, that: "Had there not been such a current of authorities as we find in the books, since the passing of the statute of wills, on the construction of wills, to 'further' (as it has been called) the intention of de-

visors, perhaps it would have been better that the same strict words had been required in testimentary dispositions of land as in those by deed; because then the language of passing estates would have been so familiar that few questions would have arisen on wills. For it has been often observed that few questions arise on the construction of deeds, when compared to those which daily arise on wills. But we are bound to consider the series of authorities on this subject as the law of the land; and it would be extremely dangerous now to remove those landmarks of real property, on which mankind has acted for such a length of time. In many of the cases that have been litigated, and in which it has been decided that the first devisee was only entitled to a life-estate, one cannot but suspect, privately speaking, that it was the intention of the devisor to give the absolute property to the first taker; and Lord Mansfield used to observe that the common class of men imagined that they could devise a fee-simple by the same words that are sufficient to give a piece of plate. But the contrary of such a supposition has now been decided by so many authorities that it would be dangerous to shake them; and in deciding on the construction of wills we must not indulge in conjectures or wishes, but determine on the words used according to those authorities. Where the word 'estate' has occurred, that word has been held *ex vi termini* to pass a fee. The courts, indeed, have gone as far as they could to give the absolute interest to the first devisee; but there are certain limits which they have put on their construction of wills, and we must take care not to transgress them." And in the same case Grose, J., said: "In the construction of wills we must be guided by those rules which we find established in former cases. And one rule is clear: That the heir at law is not to be disinherited unless the devisor's intention to disinherit him can be collected from the words of the will. What is a sufficient proof of that intention is not, indeed, accurately defined, as applicable to every case that may arise." And again, in the case of *Doe v. Allen*, 8 Term. R., 497, recurring to the same subject, Lord KENYON re-

marked: "It has been frequently lamented that at first, after the passing of the statute of wills, the courts did not require the same technical expressions in a will to pass a real estate as are necessary in conveying the estate by deed, for then we should not have had more cases on the construction of wills than of deeds; and it very rarely happens now that a question arises on the construction of a limitation in a deed. There are certain received words that are well known, and have from time to time been used by conveyancers in drawing deeds, and these exclude all doubt as to their legal meaning. But in expounding wills a greater latitude of construction has been allowed. After an anxious endeavor to discover the intention of a testator, it frequently happens that we can only conjecture what his intention was, and sometimes there is scarcely enough to form even a conjecture. Formerly Sir J. Bland made his own will, and at the close of it he said he had disposed of his estate in so clear a manner that he thought it impossible for any lawyer to doubt about it. This will was afterwards contested, and it came before Lord HARDWICKE, who said that he was so utterly at a loss to conceive what was the real intention of the testator that he wished he could find some ground on which to form a conjecture. So in the case of *Right v. Sidebotham*, Lord MANSFIELD, whose mind was as equal to the explanation of difficult points as that of any lawyer whoever sat in Westminister Hall, admitted the difficulty of deciding questions of this kind; saying: 'I varily believe that in almost every case where by law a general devise of lands is reduced to an estate for life the intent of the testator is thwarted; for ordinary people do not distinguish between real and personal property. The rule of law, however, is established and certain that express words of limitation, or words tantamount, are necessary to pass an estate of inheritance. "All my estate," or "all my interest," will do; but "all my lands lying in such a place" is not sufficient. Such words are considered merely as descriptive of the local situation, and only carry an estate for life. Nor are words tending to disinherit the heir at law sufficient

to prevent his taking, unless the estate is given to somebody else. I have no doubt but the testator's intention here was to disinherit his heir at law, as in the case of *Denn v. Gaskin.*' And yet in that case he was not bold enough to decide that the devisee took more than an estate for life." But Lord KENYON further observes: "The plaintiff's counsel, in arguing this case, anticipates the three grounds on which it might be contended on the part of the defendant that a fee passed by this will. The first is the introductory clause; on which the case of *Ibbetson v. Beckwith,* Cas. t. Talb., 157, is decisive. That case was decided by a great lawyer, Lord TALBOT, who thought that such a clause, accompanied by other words in a will, would pass a fee, but that that alone was not sufficient for that purpose; and this case has been followed by a variety of others to the same effect;" and in which he might have added to the illustrious name of Lord TALBOT the no less illustrious names of Lord HARDWICKE and Lord MANSFIELD as having afterwards expressly decided the same to be a sound rule in the construction of wills and devises of real estate without such words of limitation as are usual and necessary in deeds to convey an estate of inheritance in land. And thus stood the adjudged cases on this question in England, with the emphatic indorsement by Lord KENYON, also, that the case of *Ibbetson v. Beckwith* is decisive upon that question, when the decision was made to the same effect in the case of *Cordry v. Adams,* 1 Har. (Del.), 441, in the Superior Court of this State in 1834.

But notwithstanding the number and variety of the cases on the construction of wills referred to by Lord KENYON, there are two well-settled rules of general application on the subject clearly deducible from them, the first of which is that the heir at law is not to be disinherited except by express words in the will, or by necessary implication arising from them; and the second is that, in the construction of a will, the intention of the testator, as expressed in it, and collected from the whole of it, must prevail, provided it can be carried into effect consistently with the rules of law on the

subject; and that, although a general devise of land, or a devise of
land without words of limitation, gives to the devisee an estate in
it for his life only, if no intention on the part of the testator
to the contrary is sufficiently expressed or indicated in the devise
itself, or in some other part or parts of the will, yet, if in such a
devise, or in any other part or parts of the whole will, the intention of
the testator to give him a larger estate, as an estate of inheritance
or a fee-simple estate in the land, is sufficiently expressed or indi-
cated, the devisee will take by virtue of it such enlarged estate in
it.   And in ascertaining in such cases if any such further intention
on the part of the testator had been sufficiently expressed or dis-
closed in any part of the will by a careful view and consideration
of the whole of it, it was early decided in the courts of England
that among other parts of a will the introductory clause might be
considered, though not sufficient of itself to enlarge such a general
devise; but it might be taken with the other parts of it, to show
the meaning which the testator attached to such devise, and to what
extent he intended the devisee to be benefited by it.   And after
this had been once adopted, it soon became a settled rule of construc-
tion that, if the introductory clause of the will contained such words
as the following :   "And touching all such wordly or temporal
estate as it has pleased God to bless or endue me with in this life,
I give and dispose of in the following manner," etc.,—which were
quite common in the form of wills at that period,—as the word "es-
tate" *prima facia* imported and included in its legal sense and mean-
ing all the legal right and title which the testator then had in law
in and to the land devised, it *ex vi termini* imported an evident in-
tention on the part of the testator to devise all his right and title in
it to the devisee named, and not as by any means descriptive of the
*corpus* and locality of the land merely, but including with that the
legal idea and conception of all the right and title to and ownership of
the testator in the premises ; and if, in addition to this, there was to
be found anywhere else in the will the intention of the testator suf-
ficiently expressed or necessarily implied to disinherit his heir at law,

the court considered it conclusive evidence that he intended to give to the devisee his estate in the land absolutely, and not for life merely, although there were no words of limitation whatever expressed in the devise. And in one case, which had been several times argued before the Court of King's Bench in Ireland, and afterwards was brought before the King's Bench in England. Lord MANSFIELD and the whole court, after a careful consideration of it, and against the argument of Buller, who was then one of the counsel in the case, concluded to apply the same ruling to a will in which the words employed in the introductory clause of it were, " And as to my worldly substance, I give and bequeath," etc., by interpretating the words " worldly substance " to mean the same in that case as the words " worldly estate." *Hogan v. Jackson*, Cowp., 299. But Lord KENYON, as we have already seen, had also held it to be an established and certain rule that express words of limitation or words tantamount are necessary, even in a will, to pass an estate of inheritance. He says : " All my estate," or ' all my interest,' will do ; but ' all my lands lying in such a place ' is not sufficient. Such words are considered merely as descriptive of the local situation, and only carry an estate for life. Nor are words tending to disinherit the heir at law sufficient to prevent his taking unless the estate is given to somebody else." And, such having become the settled rule of testamentary construction in regard to disinheriting the heir at law in devises of real estate to a stranger, it was probably suggested to some one familiar with it, and with what is said to have been the legal rule in ancient Rome, that a father could not disinherit his son without leaving him at least something in his will, who first prepared a last will and testament in the form of John Cordry's and Spencer Hitch's which were evidently drawn from one and the same original model, although by different rural scriveners, presumably well on to a hundred years ago, when school-teachers were few and far between in their respective neighborhoods ; for in what better or more emphatic and unequivocal terms could a testator express his intention to disinherit

his heir at law in his will than to begin with the grave and solemn declaration of his intention to give and dispose of such worldly estate which it has pleased God to bless him with in this life in the following manner : " I give and bequeath to my well-beloved wife, Sophia Hitch, the third part of my estate, after all my just debts are paid, or the third of my estate, and no more ;" and then to follow it thus : " *Item.* I give and bequeath to Sarah Snellen one hundred feet square of ground at the north-west side of my house, where the garden now is, and the back small room in my house, and one bed and bedding, and no more. *Item.* I give and bequeath unto Anna Hitch, my daughter, one cow and calf, one bed and bedding, and no more. *Item.* I give and bequeath unto Lilly Hitch, my daughter, one cow and calf, one bed and bedding, and no more. *Item.* I give and bequeat unto Sovereign Hitch, my son, one horse and saddle, and no more. *Item.* I give and bequeath unto Nelly Hitch, my daughter, one cow and calf, one bed and bedding, and no more. *Item.* I give and bequeat unto William Hitch, my son, one horse, one bed and bedding, and no more. *Item.* I give and bequeath unto Clement Hitch, my son, one horse, one bed and bedding, and no more. *Item.* I give and bequeath unto Elget Hitch, my son, one cow and calf, one bed and bedding, and no more. *Item.* I give and bequeath unto Polly Hitch, my daughter, one young horse or mare, one bed and bedding, and no more. *Item.* I give and bequeath unto Spencer Hitch, my son, all the tracts or parcels of land belonging to me or that I am possessed of. And further, I do hereby appoint and ordain Sophia Hitch, my dear wife, my whole and sole executor of this my last will and testament, and hereby revoking all former wills," etc. I was about to inquire, when I commenced reading this will, item by item, and at full length, by what clearer, stronger, and more expressive words could the testator have declared his intention to disinherit or cut off every one·of the devisees or legatees named in it, from his widow down to his son Spencer, from taking any more of his worldly estate than he has expressly given to each one of

them in the will, excepting only the last one named in it, his son Spencer, and who evidently was the favorite child and prospective heir at law in coparcenary of the testator, and the preferred and special object of his bounty, so far as his numerous children, ten in all, then living, were concerned in the disposition of his estate under the will ; and to each of whom, in marked contrast with the liberal devise of his son Spencer, he is careful to give and bequeath a specific legacy of " one cow and calf, one bed and bedding," at least, " and no more," of this estate, obviously and necessarily implied, and so to be read and understood, when taken in connection with the first in the remarkable series of brief and concise items, in which he gives to his wife " the third part of his estate, after all his just debts were paid, or the third part of his estate, and no more," and which here clearly mean, and cannot possibly have any other meaning, than " no more," or " no other part " of my estate. And, the same uniform words following in quick succession at the close of each succeeding item until we come to the last, to his son Spencer, they must be understood, of course, to have the same meaning in all the succeeding items which they have in the first ; for if this be not the correct interpretation of their meaning, ridiculous and absurd as it would seem, we would have to hold that they literally mean, say, for instance, in the item just before specially adverted to, no more " one cow and calf, one bed and bedding," and nothing else; and equally unreasonable and absurd would be the meaning of them in every other item in the will, when so interpreted and read by me.

The case of *Cordry v. Adams* was decided about the time I commenced reading law, and was published in the first volume of Judge HARRINGTON's reports in the same year in which I was admitted to the bar. The judicial history of the case and circumstances attending the hearing and determination of it in the Superior Court, as well as the novelty and importance of it at that time in this State, attracted a good deal of attention to it from the bar throughout the State ; but as the decision was known to have had,

after deliberate and mature consideration, the sanction of as great a lawyer and as great a judge as ever adorned either the bar or the bench in this State, (I mean THOMAS CLAYTON, then Chief Justice of the Court and of the State,) I never heard the validity or soundness of the decision called in question during the 18 years I was in practice at the bar, nor until after the case of *Dodd v. Doe,* 2 Houst., 76, had been decided in this court, at the June term, 1859, four years after I came on the bench. Now, the devise in the will of John Cordry, of lands, without words of limitation, to his son William, was considered and construed by the court to constitute a devise in fee, to effect the intention of the testator as manifested in the devise, and other parts of the will taken in connection with it; and these consisted of the introductory clause of the will, which was as follows: "As it respects what God has been pleased to bless me with in this life, I give, devise, and dispose of in the following manner and form, viz.: *Item.* I give and bequeath to my daughter Milly Adams one shilling, and no more. *Item.* I give and bequeath to my son Spencer Cordry one shilling, and to have no more of my estate. *Item.* I give and bequeath my daughter Unice Adams one shilling, and no more. *Item.* I give and bequeath to my son Isaac Cordry one shilling, and to have no more of my estate." There was also an item in it giving and bequeathing 25 acres of land therein described to his son John Cordry, to him and his heirs forever. And also an item giving and bequeathing to his son William Cordry (which was the devise immediately and directly in question before the court in this case) " one featherbed, one cow and calf, and one-half part of the residue of my lands which I have not devised or deeded away." Then follows this: *Item.* I give and bequeath to my son Elijah Cordry ten acres of land adjoining a tract which I have deeded to him, to be laid off, etc.; also one feather-bed, and one cow and calf." And then this: " *Item.* I give and bequeath to my son James Cordry one-half part of the residue of all my lands which I have not already disposed of by will or deed; but if James should die without issue it is my

will and desire that my son William should have his part, to him and his heirs forever." Then finally this : " *Item.* I give to my four youngest children, Sally, Betsy, Nelly and James Cordry, all the residue of my personal property which is not before named or given in this my last will, to them and their heirs forever." And under this will the Court held the devise to William Cordry, being general and without any words of limitation, carried but a life-estate, unless a manifest intent was apparent, from the other parts of the will, to give him a larger estate; that the introductory clause, though important in a consideration of the whole will, is not of itself sufficient to enlarge the general devise, but may be taken in connection with the other parts to show the meaning which the testator attached to his devise to William, and the extent to which he designed him to be benefited by that devise; but independently of the introductory clause, that it appeared from the will that the testator designed to dispose of his whole estate in it, and not to die intestate as to any part thereof; and, referring to the various items of the will, which they consider clearly manifested such an intention on his part, the court specially refers to the bequest to his daughter Unice Adams, who was the petitioner in the case, of " one shilling, and no more," as a conclusive indication that the testator intended that she should in no event have anything more than the shilling he bequeathed to her. And I must say that I do not think that the soundness of this particular conclusion and ruling in the case has ever been, or ever can be, reasonably questioned. In one respect, however, the Cordry will falls short of the will of Spencer Hitch in this case, and that is in respect to the introductory clauses of them, perhaps, although in that particular the two wills are as much alike as in other respect ; for the introductory clause in the former will is in these words : " As it respects what God has been pleased to bless me with in this life, I give, devise, and dispose of in the following manner and torm," etc. ; while in the latter it is in these words : " And as, touching such worldly estate wherewith it has pleased God to bless

me in this life, I give and dispose of in the following manner,"
etc.   Lord MANSFIELD and his judicial associates in his day would
doubtless have held the former to be tantamount to the latter, as
each testator alike evidently meant to say, in the slightly different
form of words used for one and the same purpose, that he intended
to dispose of all his estate in the manner and form adopted by him
in his will, although the brief and simple words, "all my worldly
estate," or "all my estate," would be more exact and appropriate in
legal contemplation to express such an intention by a testator in the
introductory clause of his will.

And thus stood this state upon the question on the authority
of the decision in the reported case of *Cordry v. Adams,* when the
case in regard to Aaron Dodd's will arose in the same county, some
25 years afterwards.   It was in an action of ejectment, and on the
trial of the case in the superior court a special verdict was taken
after the will in question had been produced and put in evidence
before the jury, subject to the opinion of the court on questions of
law reserved to be heard before all the judges in the court of errors
and appeals; and the question of law reserved upon the will was
whether general words in the introductory clause of a will, such as,
"Touching all my worldly things, I give and dispose of as follows,"
etc., which occurred in the will in question, will have the effect to
enlarge a subsequent devise of lands in it, without words of limita-
tion, to an estate in fee-simple.   It was heard before all the judges,
—HARRINGTON, Ch., GILPIN, C. J., MILLIGAN, WOOTTEN, and
HOUSTON, JJ.   WOOTTEN, J., announced the opinion of the court,
and said :   "The devise was of real estate, without words of limi-
tation, to be equally divided between Absalom and Azael Dodd,
sons of the testator ; and the general words in the introductory
clause of the will—' Touching the worldly things which it had
pleased God to bless him with,' etc,—had been relied upon to en-
large the devise to a fee, and the case of *Cordry v. Adams,* 1 Har.
(Del.,) 439, had been cited in support of such a construction.   But
the present was distinguishable from that case, inasmuch as the will

of Cordry in the case referred to contained bequests or devises to the other heirs, with the express direction that they were to have no more of his estate, and on which the court rested their decision mainly, if not entirely ; for they expressly recognized and affirmed the general principle contended for in this case by the counsel for the plaintiff below, that the introductory clause in a will, such as we have in the present instance, though important in the consideration of the whole will, is not of itself sufficient to enlarge a general devise—that is, a devise of land without words of limitation—to a fee; although they add, in that particular case, that it might be taken, in connection with the other parts of the will, to show the meaning which the testator attached to his devise to William, and the extent to which he designed him to be benefitted by it, accompanied as it was with a preceding bequest to his daughter Unice, the wife of Adams, who were the plaintiffs in the action, with the express provision that she was to have " no more " of his estate. But *Cordry v. Adams* has never been considered an authority beyond the special circumstances and ruling of the court in that case." *Dodd v. Doe.* This decision was made, without a dissenting opinion, by all the judges of the state, constituting a tribunal under a clause in the constitution of the state specially provided for the purpose of giving to any question of law decided by its unanimous sanction the weight of the highest authority that can be given to a judicial decision in any of its courts, and also of higher authority within its own limits than any decision delivered elsewhere upon a question of this kind. And rigidly restricting and confining it to the special circumstances and ruling of the court, what does it clearly and conclusively decide as abstract rule or principle of law applicable in such a case? . It affirmed in express terms the decision of the court below, and the right of the plaintiff below to recover in the devise in question, and that the devisee, by virtue of it and the other parts of the will specially mentioned in the opinion, took an estate in fee in the lands devised ; and expressly distinguished the case then directly before it, of *Dodd v. Doe,* from

the case of *Cordry v. Adams*, and particularly affirmed the ruling of the court below that it was so distinguishable, inasmuch as the will of Cordry contained bequests or devises, which the Dodd will does not, to the other heirs, with express direction that they were to have no more of his estate, and on which the court rested their decision mainly, if not entirely; and upon which distinction, I may here add, the court in bank solely rested its decision in the case of *Dodd v. Doe*, on the Dodd will, as constituting such a wide and substantial difference between them. And the reason for that ruling was that such bequests or devises to other heirs at law of the testator, with an express direction that they were to have no more of his estate, clearly showed that the testator must have intended by the general devise to give the devisee all his estate in the land, and not an estate for his life merely; as in that case, upon his death, every heir at law would take by descent his respective share in it, contrary to that intention so declared by him. But there was no such direction contained in any item or in any part whatever of the will of Aaron Dodd, the testator in the case then before the court while the will now before us, of Spencer Hitch, is not only much stronger in this and other respects than the will of Aaron Dodd, but the will of John Cordry also; for, in the first place, the words employed in the introductory clause of his will are "worldly estate," which, according to the well-established legal import of the word "estate," included not only his real and personal property, but also whatever estate in law he then owned in the former; and, in the next place, every item in the will, including even the first,—the devise to his wife, after the payment of all his just debts, of the third part of his estate,—down to the last,—the devise to Spencer Hitch, his son, —terminates with the express direction, "and no more," as in the Cordry will. But the fact that they are omitted from the last item, containing the devise to him of all the tracts or parcels of land belonging to him, (the testator,) is so peculiar as not only to attract our attention, but to justly entitle it to particular weight, when taken into consideration with all the other items in the will, con-

sisting of 10 in number, and in which a devise or bequest, made to every other son and daughter, together with the wife even of the testator, is terminated with the same uniform and express direction, in determining what the testator meant by this marked discrimination in the dispositions of his will between his son Spencer and every other one of his children and heirs at law.   In my judgment it is susceptible of but one interpretation, and that is that he evidently intended thereby to disinherit every one of them but Spencer as to the lands so devised to him, and by so doing to devise them to him in fee, and not for his life only.   And upon the authority of the similarity in the circumstances, and the ruling and the principle or rule of construction recognized in the case of *Dodd v. Doe*, I think Spencer Hitch took under the will of his father an estate in fee in the lands devised to him.   And accordingly I have come to the conclusion that this case comes within the rule of construction stated by me in the commencement of this opinion, that, although a devise of real estate without words of limitation will give a life-estate merely, yet, if the testator, in the devise itself, or in any part or parts of the will, expressly disinherits the heir at law, it will have the legal effect, by judicial construction, to enlarge it to a devise in fee.

As to the other cases cited from our state reports by the counsel for the plaintiffs, I must say with reference to the cases of *Doe v. Alexander*, 2 Houst., 234, and of *Doe v. Biddle*, Id., 402, that whatever conflict, discrepancy, or inconsistency may appear or exist between them or either of them and the rulings of the court in the case of *Cordry v. Adams*, and expressly recognized and affirmed by the court in bank in the case of *Dodd v. Doe*, 2 Houst., 76, that I have never considered those cases of equal weight and authority in our courts with the latter case, because they were decisions by three judges only, in an inferior court, and of course could not invalidate or overrule the decision in the last-mentioned case as one of the very highest authority before this tribunal and throughout this state.   And although the case of *Doe v. Lamp-*

*leugh*, 3 Houst., 461, was also a decision by all the judges in bank, the court, in its opinion, casts some rather indefinite taint of suspicion upon the decision in the case of *Dodd v. Doe*, as an instance in which the court had overstepped the limit of its judicial power in the construction of such devises ; and yet that case varies so much in the questionable words used in the introductory clause of the will, and in the special circumstances of it, from the Cordry will, and is withal marked with such an unlimited resort to the context, scope, and apparent objects of the will in question, in order to discover from it that by a devise of real estate to one of his relations, "to him and his heirs, if any he should have, but if he should die without any heir, then in that case the land and premises so devised to him shall be the right and property of my grandson, George May," that the testator's intention was to give the first devisee an estate tail in the premises, and if he died without issue or heirs of his body,—which he did,—that the right and property in them should go to his grandson, George May, in fee; and although that case expressly intimates, as I have before observed, that the court had overstepped the limit in the case of *Cordry v. Adams*, it certainly goes quite as far, if not further, in the same direction, in ruling in the case of George Black's will that, "whether or not the words 'right and property,' when applied to a devised estate, are sufficient *proprio vigore*, unexplained by the context or scope of the will, to pass a fee, yet, if it is clear to the court from the context and general scope of the will that they were used by the testator with an intent to pass the fee-simple, the court must so construe them ;" for I must say that I know of no case that goes any further in that direction ; and therefore, instead of impugning or weakening, I have always considered it as sustaining and affirming, the rule of construction laid down in *Cordry v. Adams*, and expressly recognized by all the judges in *Dodd v. Doe* ; and, having been thus twice ruled by the highest court of last resort in this state, I have ever since considered the weight and authority of them paramount in the courts of this state to any de-

cision elsewhere to the contrary, not even excepting a decision of the house of lords in England.

PAYNTER, J., (*concurring*.)  The statute of this state (Rev. Code, c. 84, § 24) provides that "a devise of real estate in a will, without words of limitations, shall be construed to pass the fee simple, or other the whole estate or interest which the testator could lawfully devise in such real estate, unless a contrary intention appear by the will." This statute was first enacted February 20, 1849, and afterwards re-enacted in the Code of 1852. The will of Spencer Hitch, Sr., now under consideration in this case, was made and admitted to probate in 1797, long before this said statute was enacted, which changed the rule of English law in that regard. The late act, therefore, has no application to this case, and the will of the said testator must be construed according to the law in force prior to the enactment of said statute. There being no act of assembly on the statute books of this state, prior to the passage of said act, in conflict with the common law concerning the construction of devises of real estate without words of limitation, the rules of construction at common law must govern us in ascertaining the intention of Spencer Hitch, Sr., as expressed in his last will and testament. The rule at common law, as laid down by Kent and other text-book writers upon this subject, is that " the intention of the testator is the first and great object of inquiry; and to this object technical rules are, to a certain extent, made subservient. The intention of the testator, to be collected from the whole will, is to govern, provided it be not unlawful, or inconsistent with the rules of law. The control which is given to the intention by the rules of law is to be understood to apply, not to the construction of words, but to the nature of the estate,—to such general regulations in respect to the estate as the law will permit. To allow the testator to interfere with the established rules of law would be to permit every man to make a law for himself, and disturb the metes and bounds of property. It does require the word 'heirs' to con-

vey a fee, but other words denoting an intention to pass the whole interest of the testator, as a devise of 'all my estate,' 'all my interest,' 'all I am worth, or own,' 'all my right,' 'all my title,' or 'all I shall die possessed of,' and many other expressions of the like import, will carry an estate of inheritance, if there be nothing in other parts of the will to limit or control the operation of the words." The learned author says, further, that in the construction of devises the intention of the testator is admitted to be the pole star by which the courts must steer; yet that intention is liable to be very much controlled by the application of technical rules, and the superior force of technical expressions. The question still occurs, whether the settled rules of construction are not the best means employed to discover the intention. It is certain that the law will not suffer the intention to be defeated, merely because the testator has not clothed his ideas in technical language. But no enlightened judge will disregard a series of adjudged cases bearing on the point, even as to the construction of wills. Established rules, and an habitual reverence for judicial decisions, tend to avoid the mischiefs of uncertainty in the disposition of property, and the much greater mischief of leaving to the courts the exercise of a fluctuating and arbitrary discretion. The soundest sages of the law, and the solid dictates of wisdom, have recommended and enforced the authority of settled rules in all the dispositions of property, in order to avoid the ebb and flow of the reason and fancy, the passions and prejudices, of tribunals. When a particular expression in a will has received a definite meaning by express adjudications, that meaning ought to be adhered to, for the sake of uniformity and of security in the disposition of landed property. The generally accepted doctrine is that an expression used by the devisor denoting only a description of the estate, without the use of words of limitation, passes only a life-estate to the devisee; but if the words used by the testator denote the quantity of interest which he possesses, then a fee passes. In this case Spencer Hitch, Sr., after mentioning in the introductory

clause that, "as touching such worldly estate wherewith it hath pleased God to bless me with in this life, I dispose of in the following manner," gives and bequeaths in ten items to each of his children and heirs at law, not including Spencer Hitch, Jr., certain legacies and properties therein mentioned, and saying at the end of each item, "and no more." He then, in the eleventh and last item of his said will, uses the following language : " I give and bequeath unto Spencer Hitch, my son, all the tracts or parcels of land belonging to or that I am posesed with. And further, I do hereby appoint and ordain Sophia Hitch, my daier Wife, my hole and Sole Executor, of this my last will and testament, and hereby revoking all former wills." The question before us is whether Spencer Hitch, Jr., mentioned in the said eleventh and last item of said will, took a life-estate or an estate in fee-simple under and by virtue of the said last will and testament of Spencer Hitch, Sr., deceased. That the great object of inquiry in the construction of a will is to ascertain the intention of the testator, that such intention must be ascertained from the language of the whole will, and, when so ascertained, that the intention of the testator, if legal, must prevail, are general principles of law so clearly established that it seems almost unnecessary to cite authorities in their support. The principles are laid down by Kent, Barr, Jarman, Roberts, Hawkins, and other elementary writers upon this subject, while the same principles are applied in numerous adjudicated cases, both in the American and English reports. But such intention must be ascertained from the language of the testator. To jump to the conclusion that a testator meant to devise a fee when he did not express such an intention, would not be justified by any established rule of law as to the construction of wills. The intention of a testator must not be left to mere conjecture, nor ought a devise without words of limitation be construed a fee on the ground of *voluit sed non dixit*. Such intention must be gathered from the language of the whole will. The testator must express by some means his intention ; not necessarily in technical words, not necessarily by saying " his

heirs," not necessarily in the perspicuous language of the legal ex-
pert, or with the polished expression of literary cultivation, but he
must nevertheless so express himself that his intentions may be as-
certained from the language used in the will.   In some forms he
must say as well as wish.

It has been decided in this State, in the case of *Dodd v. Doe,*
2 Houst., 76, that a " general devise in the introductory clause of
a will, indicating a purpose on the part of the testator to dispose of
all his estate by the will, connot enlarge a subsequent and particu-
lar devise of land without words of limitation to a fee."   But the
court in this case, while deciding that such words in the introduc-
tory clause were not sufficient of themselves and alone to enlarge
the estate into a fee, did not deny the principle as laid down in
*Cordry v. Adams,* 1 Har. (Del.), 441, that the introductory clause
was important in a consideration of the whole will, and may be
taken, in connection with the other parts, to show the meaning
which the testator attached to his devise to the devisee, and the ex-
tent to which he designed him to be benefited by that devise.   The
same principle is recognized in the case of *Wilce v. Wilce,* 7 Bing.,
664, 20 E. C. L. 296 ; *Kinght v. Selby,* 3 Man. & G., 92, 42 E. C.
L., 57 ; *Jackson v. Merrill,* 6 Johns., 185 ; and in many other cases
decided both in this country and in England.   The words used by
the testator in this case in the introductory clause are :   "And as
touching such worldly estate warwith it hath pleased God to bless
me with in this life, I give and dispose of in the following man-
ner."   His use of the words "such worldly estate," etc., if they had
been used in the item of devise itself, would go far towards indica-
ting his intention to pass his whole interest in the property, which
was a fee.   But in the introductory clause alone, without anything
expressed in the will showing such intention, those words are not
sufficient for that purpose.   It becomes necessary, therefore, to ex-
amine the words of the will in connection with the language of the
introductory clause.   As we have seen, he mentions and includes
each one of his children and heirs in his will, and adds to the be-

quest of each one of the words "no more," until he mentions
Spencer Hitch, Jr., to whom he devises the lands in question, with-
out words of limitation. The will of John Cordry, in the case of
*Cordry v. Adams,* was very similar in many respects to the will now
under consideration. The introductory clause said: " As it re-
spects what God has been pleased to bless me with in this life, I
give, devise, and dispose of in the following manner and form."
He then bequeaths legacies, etc., adding to each sometimes, the words,
"no more," and again the words, " no more of my estate." He devises
the lands in question in that case to the devisee, without words of
limitation. Judge HARRINGTON, in announcing the opinion of
the Court, after speaking of the introductory clause, to which we
have already referred, said : " Independently of the introductory
clause, it does appear from the will that the testator designed to
part with his whole estate, and not to die intestate as to any part
thereof ; for he notices all of his children, even those to whom,
having probably been advanced by him to the extent of their equal
share, he bequeated a shilling, and ' no more ;' recognizes certain
conveyances by deed which he had already made part of his pro-
perty ; and, after some devises of land, he gives to William one-
half part of the residue of all his lands which he had not already dis-
posed of by will or deed. His personal property he in like man-
ner parcels out, and in a very comprehensive residuary bequest dis-
poses of all ' the residue of his property which is not before named
or given in that, his last will,' to his four youngest children. It is
impossible to suppose, from this view of the will, that the testator
did dot design to dispose of all his property, and he expressly de-
clares his intention to do so in the introductory clause, ' As it re-
spects what God has been pleased to bless me with in this life, I
give, devise and dispose of,' " etc. The will in the case of *Cono-
way v. Piper,* 3 Har. (Del.), 483, contained a devise to Isaac and
John Short, without words of limitation, and afterwards a residu-
ary clause, " that after all the legacies are paid, that the remainder of
my estate should be equally divided between Isaac and Leonard and

John and Nancy, to them and their heirs." The failure to use words of limitation in the devise to Isaac and John Short, and the use of such words in the residuary clause, showed that the testator omitted them intentionally, while the making of the residuary clause was of itself proof that he desired the reversion to go to his residuary devisees. This case is therefore not necessarily in conflict with *Cordry v. Adams*. The same questions did not arise. In the case of *Dodd v. Doe*, 2 Houst., 76, the introductory clause had been relied upon to enlarge the fee. The Court decided that the words, " touching the wordly things which it had pleased God to bless him with," in the introductory clause, would not of itself enlarge the devise to a fee. But though the judge in announcing the opinion of the Court said that the case of *Cordry v. Adams* has never been considered an authority beyond the special circumstances and ruling of the Court in that case," he thereby recognized the case as authority, as far as such circumstances and rulings were concerned, while he throughout the opinion distinguished the one from the other, " inasmuch as the will of Cordry contained bequests on devises to the other heirs, with the express direction that they were to have no more of his estate, and on which the Court rested their decision mainly, if not entirely ; for they expressly recognized and affirmed the general principle contended for in this case,   *   *   * that the introductory clause in a will such as we have in the present instance, though important in the consideration of the whole will, is not of itself sufficient to enlarge a general devise—that is, a devise of land without words of limitation—to a fee ; although they add, in that particular case, that it might be taken, in connection with the other parts of the will, to show the meaning which the testator attached to his devise to William, and the extent to which he designed him to be benefited by it, accompanied as it was with a preceding bequest to his daughter Unice, the wife of Adams, who were the plaintiffs in the action, with the express provision that she was to have ' no more ' of his estate." The case of *Doe v. Alexander*, 2 Houst., 234, as reported, as seemingly in conflict with

*Cordry v. Adams.* But, upon examining the probated will of Hezekiah Morris, which was the will under consideration in that case, the testator did not use words of the same signification in the introductory clause as did the testator in the will considered in the case of *Cordry v. Adams,* or as did Spencer Hitch in the will now under consideration. Hezekiah Morris, in the introductory clause of his will, says : " As touching such worldly goods as it hath pleased God to bless me with, I give and dispose of in the following manner, viz." This language does not show the same intent upon the part of the testator as the words, " what God has been pleased to bless me with in this life," used by the testator in the case of *Cordry v. Adams,* or the words, " as touching such worldly estate warwith it hath pleased God to bless me with in this life," used by Spencer Hitch, Sr., in the will now under consideration. The word " goods," used by Morris, would only imply personalty, or at any rate it does not carry with it as strong a signification of the entire estate as do the words in the introductory clause of the will of John Cordry, or Spencer Hitch, Sr. This language in the introductory clause of the will of Morris does not appear with the charge of the court, but the will, with the introductory clause, was before the court, when Chief Justice GILPIN charged the jury "that the court could not discover any such intention sufficiently apparent and certain in the whole body of it, when taken together, to control the legal signification and construction of the immediate item in question, and which must prevail in the absence of any words of inheritance, or limitation, or other technical and legal expressions necessarry to create and confer a title by devise in fee-simple." In the construction of the will of Morris, with the said introductory clause, the court had nothing to enable them to construe the devise to Constantin T. Morris a fee-simple except the preceding items in the will, in which Morris had bequeathed a pecuniary legacy to each of his heirs at law except Constantine, concluding and terminating the item or clause of bequest to each, respectively, with the following

words: "To have the aforesaid legacy, and no more of my estate." This the court decided to be insufficient, of itself, to express the intention of the testator in favor of a fee in the subsequent devise of real estate without words of limitation. The case of *Doe v. Alexander* does not overrule the case of *Cordry v. Adams* in express terms, and is not really in conflict with it when the two cases are analyzed, because the decision in *Cordry v. Adams* was based upon the words "no more" and "no more of my estate," at the end of the bequests preceding the devise of real estate, in connection with the words, "As it respects what God has been pleased to bless me with in this life," in the introductory clause of the will, while in the case of *Doe v. Alexander* the introductory clause was not in the same words or of the same signification.

In examining and analyzing the different Delaware decisions we therefore find one case—*Dodd v. Doe*, 2 Houst., 76—deciding that a general devise in the introductory clause of a will indicating a purpose on the part of the testator to dispose of all his estate by the will cannot of itself enlarge a general devise—that is, a devise of lands without words of limitation—to a fee. We find another case,—*Doe v. Alexander*, Id., 234,—which virtually decides that when a testator bequeaths several legacies to his children, accompanying the bequest to each with the concluding words, "and to have no more of my estate," such words are not sufficient, of themselves, to construe a subsequent item of a will devising real estate without words of limitation as intending a fee-simple. Still another case—*Cordry v. Adams*—decides that when the introductory clause says, "As it respects what God has been pleased to bless me with in this life, I give and devise and dispose of as follows," and the body of the will contains bequests and devises to his other children, accompanied with the words at the end of each bequest of "and no more," or "no more of my estate," that upon a construction of the whole will, including the introductory clause, a devise in a subsequent item to another devisee without words of limitation shall be considered a fee to effect the intent of the testator. The case of

*Doe v. Biddle,* 2 Houst., 403, and the case of *Doe v. Lampleugh,* cited by the plaintiffs, do not decide the question as to the construction of language similar to the language employed by the testator in this case in connection with the introductory clause in the will before us. In *Doe v. Lampleugh,* speaking of an hypothetical case, the court incidentally mentioned *Cordry v. Adams* as overstepping the limit, but such was a mere *ipse dixit,* and not really a decision of the question then before the court. I can therefore find no case in the Delaware Reports where the language was similar to the will in the case of *Cordry v. Adams,* and where the courts have absolutely overruled said decision in express language, or have decided a case similar to it in all respects in conflict with said decision. The principles then decided seem to be supported by both English and American authorities, notable among which are the cases of *Doe v. Clayton,* 8 East, 141 ; *Cook v. Holmes,* 11 Mass., 528 ; *Baker v. Bridge,* 12 Pick., 27. In view, therefore, of the case of *Cordry v. Adams* having stood so long in our Reports as an authority upon the questions then decided without being overruled in express terms, and supported, as it is, by both English and American authorities, I do not deem it proper to question it as an authoritative decision in this state, at this time. The will of Spencer Hitch is very similar to that of Cordry. He bequeaths legacies to all of his children, not including Spencer Hitch, accompanying each item with the words, "and no more," and says in the introductory clause : "Touching such worldly estate wherewith it has pleased God to bless me with in this life, I give and dispose of in the following manner." Upon a consideration of all the language in the whole will, and regarding the word "estate," used in the introductory clause, in connection with the entire will, as even stronger than the term used in the will of John Cordry, I am of the opinion that, according to the authorities we have had before us, we are perfectly justified in construing the intentions of Spencer Hitch, Sr., to devise an estate in fee to his son Spencer Hitch, Jr., in the item where he

devises all the tracts and parcels of land belonging to or that he is possessed with. The last-mentioned item might not be sufficient, alone, to justify such a construction; but according to the authorities cited, upon a consideration of the whole will, and upon referring to the introductory clause, in connection with his other expressions, I am of opinion that it does not strain either the English or American rules to give the devise such a construction. Under these circumstances, therefore, the judgment below ought to be affirmed.

SAULSBURY, Ch., (*dissenting.*) I dissent from the opinions of the majority of the court just read. I have been familiar with the provisions of the will of Spencer Hitch for more than 30 years. I have never had a doubt in respect to the proper interpretation of that will. The sole question for our decision in this case is, what estate did Spencer Hitch take under the will of his father, dated the 5th day of February, 1797,—whether an estate for life, or in fee? If the former, then the judgment of the court below is to be reversed; if the latter, it is to be affirmed. The last item of the will of Spencer Hitch, the father, and under which Spencer Hitch, the son, took whatever estate he did take,—the spelling being corrected,—is as follows : " I give and bequeath unto Spencer Hitch, my son, all the tracts or parcels of land belonging to or that I am possessed with." This is the whole of this item of the will which has relation to the devise to the son. Where there are no words of limitation to a devise, the general rule of law as it existed in this state at the date of the will of Spencer Hitch was that the devisee takes an estate for life only, unless from the language there used, or from other parts of the will, there is a plain intention to give a larger estate. It matters not, in determining the meaning of the will of Spencer Hitch, that more than 50 years after his death, and after the rights and interests of his devisees were fixed, and the quantity and quality of their estates determined by the provisions of his will, that the general rule in respect to the interpretation of wills was modified or changed by an act of assem-

bly of this state, so as to give to a devisee of lands a fee therein, unless it should appear by the will that a less estate was intended to be given.   This modification or change can have relation only to wills made subsequently to the date of the act of assembly making them, and notto wills made prior thereto.   There are no words of the devise of the father to the son—that is from Spencer Hitch Sr., to Spencer Hitch, Jr.—which admit of passing a greater interest than an estate for life.   And if a greater interest than for life did pass by the will of the father to the son, it was because by considering the whole will, or specially some particular part thereof, the intention of the testator that such larger estate should pass to the son can be sufficienly gathered or ascertained. Now there are 11 items in the will of Spencer Hitch, the testator, the eleventh of which is the item containing the devise to Spencer Hitch, the son. It was not contended in the argument, and cannot be successfully contended, that the first 10 items of the will, or either of them, considered separately, can have the effect of enlarging the devise contained in the eleventh item to the son from the devise for life to a devise in fee.   It was contended, however, by the counsel for the defendants below and defendants in error, that the intention of the testator to pass such larger estate to the son might be ascertained and should be determined by considering the will of the testator as an entirety, and give an effect to each of its provisions relatively, each to the other ; and much stress was laid upon that part of the introductory clause of the will which recited that, "As touching such worldly estate wherewith it has pleased God to bless me with in this life, I give and dispose of in the following manner."   "The most that can be said," says Judge STORY, delivering the opinion of the Court in the case of *Wright v. Denn,* 10 Wheat., 228, (and so say the authorities generally,) "is that, where the words of the devise admit of passing a greater interest than for life, courts will lay hold of the introductory clause to assist them in ascertaining the intention."   Does the devise by the father to the son, contained in the eleventh item of his will, admit of passing greater interest

than for life? If it does, I will gladly lay " hold of the introductory clause to assist us in ascertaining the intention ;" otherwise I am precluded from so doing. I cannot find a sufficient warrant in the words of this will of Spencer Hitch, the testator, to pass the fee to Spencer Hitch, his son. The testator may have intended it, and probably did, as said by Judge STORY in the case of *Wright v. Denn,* but intention cannot be extracted from his words with reasonable certainty ; and I have no right to indulge myself in mere private conjectures, for the law does not decide upon conjectures, but upon plain, reasonable, and certain expressions of intention found on the face of the will. The judgment below should be reversed.